Sharon **CROSSON**, Plaintiff,

v.

Rose **SILVER**, County Attorney, Pima County, Arizona, Defendant.

No. Civil 70-79 Tucson.

United States District Court, D. Arizona.

Nov. 13, 1970.

Erik M. O'Dowd, Tucson, Ariz., for plaintiff.

Rose Silver, Pima County Atty., Stephen D. Neely, Deputy County Atty., Tucson, Ariz., for defendant.

Before ELY, Circuit Judge, and WALSH and CRAIG, District Judges.

### OPINION

WALSH, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202 seeking declaratory relief and an injunction restraining defendant from further criminal proceedings against plaintiff under the Arizona flag desecration statute, A.R.S. § 41–793, subsec. C (1956). This three-judge court was convened since the requests for relief meet the criteria of 28 U.S.C. §§ 2281 et seq. Our jurisdiction is founded on 28 U.S.C. § 1343(3) and (4).

From the statement of facts stipulated by counsel, it appears that on June 2, 1970, defendant filed in the Superior Court of the State of Arizona in and for the County of Pima an amended information [1] charging that on or about May 6, 1970,

> Sharon K. Crosson did, by her act of burning a flag of the United States

---

1. The initial pleading by the state in Superior Court was a "direct" information filed May 19, 1970, charging that Mrs. Crosson "did knowingly and public-ly mutilate, deface, defile, trample upon, or by word or act cast contempt upon a flag all in violation of A.R.S. § 41–793."

of America, wilfully, unlawfully, and publicly mutilate, deface, defile or cast contempt upon said flag, all in violation of A.R.S. § 41–793, subsec. C. Section 41–793, subsec. C reads in pertinent part:

A person who publicly mutilates, defaces, defiles, tramples upon, or by word or act casts contempt upon a flag is guilty of a misdemeanor. * * *

Subsection D of Section 41–793 defines "flag" as including

any flag, standard, color, ensign or shield, or any copy, picture or representation thereof, made of any substance or of any size, purporting to be the flag, standard, color, ensign or shield of the United States or of this state.

Plaintiff entered a plea of not guilty and moved to quash the information. This motion was denied.

At the trial,[2] defendant intends to prove that on May 6, 1970, on the University of Arizona campus, plaintiff publicly burned or aided and abetted the public burning of a United States flag, and that the burning was done with intent to cast contempt upon the flag. The contemptuous intent will be shown by testimony that concurrently with the burning plaintiff made remarks of a derogatory nature directed at the flag and the foreign policy of the United States with respect to the Southeast Asia military involvement. Defendant will not, however, seek a conviction on the basis of any of plaintiff's remarks but only for the act of flag burning.

In this court, plaintiff has moved for summary judgment asking that we declare A.R.S. § 41–793, subsec. C violative of the First and Fourteenth Amendments. Specifically, plaintiff's attack charges the statute is overbroad in that it impermissibly infringes on protected expression and, further, it uses terminology so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.

Defendant has moved to dismiss or in the alternative asks this court to abstain from passing on the statute's constitutionality. Defendant argues that if the statute is not constitutionally perfect, its vices are minor and clearly within the reach of an acceptable limiting construction readily to be anticipated as a result of the state criminal prosecution.

For the reasons set out below, we find A.R.S. § 41–793, subsec. C unconstitutional.

■ The controlling precedent on the issues before this court is United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Prior to analyzing these issues in light of the *O'Brien* formula, however, we must decide something *O'Brien* assumed, namely, whether the conduct drawn into question by the subject statute is conduct "so intertwined with expression" as to bring the First Amendment into play. See Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970) (Harlan, J., concurring). Plaintiff asserts, and we agree, that her act of publicly burning the flag was symbolic speech.

While we need not here determine whether all conduct intended to express an idea is symbolic speech, we think it is self-evident that most, if not all, conduct associated with the United States flag is symbolic speech. Such conduct is normally engaged in with the intent to express some idea. Further, such conduct is invariably successful in communicating the idea. There is nothing equivocal about a flag-draped casket or a flag flying at half-mast at the death of a dignitary. Nor in this day and time is anyone likely to mistake the nature of the ideas expressed by a young person who desecrates his country's flag at an anti-war gathering.

There is, then, a recognizable expressive element in conduct prohibited

---

2. Defendant has agreed to defer prosecution in the state court pending a decision by this court.

by A.R.S. § 41–793, subsec. C. Accordingly, such conduct is prima facie protected by the First Amendment and the statute must be scrutinized to determine whether its regulation of the conduct is constitutionally permissible. The method of scrutiny is that directed by *O'Brien.*

In *O'Brien* the Court noted that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. at 376, 88 S.Ct. at 1678. Whether the regulation in question properly effects the interest depends on whether

> it is within the constitutional power of the Government * * * it furthers an important or substantial governmental interest * * * the governmental interest is unrelated to the suppression of free expression * * * the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. at 1679.

 The only state power this court perceives as a constitutional basis for a penal statute of the type here involved is the police power. We specifically reject the existence of a constitutionally recognized state power to prohibit flag desecration based on an interest in preserving loyalty or patriotism. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). But cf., United States v. Ferguson, 302 F.Supp. 1111 (N.D.Cal.1969). Whether the statute with which we are here concerned is a proper exercise of the police power necessitates an analysis of the statute to determine if it satisfies the last three *O'Brien* criteria.

Having decided that flag desecration can be symbolic speech, we must now determine what are the speech and nonspeech elements in such conduct in order to decide whether there is an important or substantial governmental interest in regulating the nonspeech element. The speech element is the readily recognizable expression of discontent with something the flag symbolizes. The nonspeech element in an act of flag desecration is the physical act of desecration.[3] What governmental interest, then, could there be in regulating this element?

When accomplished in public, this nonspeech element of flag desecration has a dual impact. The first impact is on the flag itself: it is mutilated, destroyed, or otherwise desecrated. The second impact is on the viewers: the emotions they experience, approval, disapproval, or even indifference, at the sight of the flag being desecrated. Since these two "impacts" can fairly be characterized as part and parcel of the nonspeech element of public flag desecration, a statute prohibiting such behavior must be justified by virtue of a finding that there is a substantial or important governmental interest in preventing one or both "impacts."

We note the listing in Street v. New York, 394 U.S. 576, 591, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), of the possible governmental interests which could be furthered by a prohibition against casting contempt on the flag "by words." The characterization and disposition by *Street* of these interests is helpful, though not dispositive, since we are not prepared to say that there is no difference between the "impact" of pure speech on the listener and the "impact" on the viewer of the nonspeech element of symbolic speech. See Note, Freedom of Speech and Symbolic Conduct: The Crime of Flag Desecration, 12 Ariz.L. Rev. 72, 77 (1970).

 We find that the State has no property interest in the flag sufficient to support a prohibition against the

---

3. We use the term "desecration" in this opinion in its broadest sense; i. e., encompassing acts touching and not touching the flag, and acts more or less offensive.

first "impact"; i.e., physical desecration of the flag. And we read *Street* as holding that the State cannot justify such a prohibition in order to insure that the potential desecrator shows proper respect for the flag. 394 U.S. at 593, 89 S.Ct. 1354.

■■ Insofar as the second "impact" is concerned, we must decide whether there is some governmental interest connected with the reactions of viewers of an act of flag desecration. We find nothing inherent in the act which stimulates those viewers who sympathize with the aims of the desecrator to engage in unlawful acts, such as rioting. Nor is the protection of the "sensibilities of passersby" the proper concern of the State. On neither score is there a substantial or important governmental interest furthered by a prohibition based on the second "impact."

■ This court cannot say, however, that the state legislature could not validly find that certain types of public flag desecration are so inherently inflammatory that in and of themselves they are likely to provoke the average person to retaliation and thereby cause a breach of the peace. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Just as the flag is a symbol to the desecrator, representing perhaps oppression, hypocrisy, ill-conceived military ventures, or whatever, so is it a symbol to many Americans of a love as strong as love of self, that of love of country. We think it is within the realm of legislative judgment to find that some types of public flag desecration will be as provocative to many viewers as the kind of personal insult which is often followed by violence. That the state has a substantial interest in preventing the resulting breach of the peace and that the police power is the proper foundation for legislation directed toward that end is well settled doctrine.

It is also clear that in line with the third *O'Brien* criterion the state interest in preventing breaches of the peace

is, in the flag desecration context, unrelated to the suppression of free expression. The interest is affected, not by the speech element of the conduct, but by the second "impact" of the nonspeech element. To more clearly differentiate, the symbolic expression of the idea originating in the mind of the desecrator does not carry the "impact" which per se causes the breach of the peace. Rather it is the previously described second "impact" of the nonspeech element which causes the breach and affects the state's interest. The state in order to further its interest may reach out to the cause of the breach and prohibit it. Since in this context the cause is not protected expression, it is clear that the state interest underlying the prohibition is not related to the suppression of free expression.

■ Thus far we have discussed in general terms a state's prohibition of public flag desecration. Having identified a power on which such a prohibition can be based and a state interest which could justify the exercise of the power, and having determined that interest to be unrelated to suppression of free expression, we must examine the statute in question here to determine whether its method of prohibiting public flag desecration places no greater burden on protected expression than is necessary to further the state's interest in preventing breaches of the peace. In other words, is A.R.S. § 41–793, subsec. C drawn so as to include within its prohibition only those types of flag desecration which per se are likely to cause breaches of the peace or does it include non-provocative yet protected-because-symbolic types.

The statute first prohibits "publicly" desecrating the flag. Some such limitation is necessary if it is to be said the state is protecting against breaches of the peace. In this context, however, "publicly" would have to be construed to include only those situations where any member of the public could attend, specifically one who might react violently.

The remainder of the statute, however, is not susceptible to any limiting construction. On the contrary, its reach is altogether clear when it penalizes a person who publicly "mutilates, defaces, defiles, tramples upon, or by word or act casts contempt upon a flag. * * *" [4]

Assuming, but not deciding, that the terms mutilate, deface, defile, and trample upon are specific enough to connote only acts which when performed upon an actual United States flag are likely to provoke retaliation from the average person, we cannot find that a prohibition of any "act [which] casts contempt" includes only acts the doing of which the legislature may validly prohibit. When the plain meaning of contempt is considered in light of the immense variety of conduct by which human beings express themselves, it becomes clear that acts casting contempt upon the flag could range from the obscene to the innocuous. While it may be true that some acts are more contemptuous than others, "contempt" is not itself a word of degree but is all-encompassing. It would describe such acts as sticking out one's tongue, turning one's thumbs downward, or raising a clenched fist salute. Rather than provoke the average person to retaliate violently, these acts would likely merit no more than a scornful glance.

The "contempt" portion of § 41–793, subsec. C would prohibit the doing of all such acts. Yet these acts, which are clearly symbolic speech, do not affect the only legitimate state interest underlying such a prohibition. Even assuming

there are acts of contempt which, when directed toward the flag, are inherently inflammatory, the prohibition against "acts [which] cast contempt" by its terms proscribes substantially more than is necessary to protect the state's interest; and that which is unnecessarily proscribed includes protected symbolic speech. Since we cannot see that any limiting construction short of excision can cure the defect,[5] this portion of § 41–793, subsec. C must be struck down as unconstitutionally overbroad. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

It may be argued that the statute is disjunctive and thus severable, and that we should approve the "mutilate, deface, defile, or trample upon" portion. However, we find that these terms, when juxtaposed against the definition of "flag" in § 41–793, subsec. D, lose whatever susceptibility to a properly narrow application they may have had standing alone.

It is clear that when a person places on his automobile windshield a flag decal with a peace sign superimposed thereon, he has, in his effort at symbolically expressing his conception of what the flag should stand for, also "defaced" a "representation * * * purporting to be the flag * * * of the United States. * * *" Such an act violates § 41–793, subsec. D and exposes the actor to criminal punishment. Yet we cannot conceive that such an act is likely to provoke the average citizen to angry retaliation.[6]

4. We examine this statute as though the "by word" provision were not included. We consider this phrase already excised by Street v. New York, supra.

5. See Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). It will not suffice that the state may decline to prosecute relatively trivial acts of contempt. The hazard of prosecution and consequent chilling effect remains. Baggett v. Bullitt, 377 U.S. 360, 373, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

6. In view of our limited finding that it is the sight of the flag being desecrated in

certain ways that is likely to provoke retaliation, we must question the inclusion in § 41–793, subsec. D of "standard, color, ensign or shield" as items which when desecrated are likely to provoke retaliation. We cannot say that conduct associated with these objects would, if communication is intended, necessarily constitute symbolic speech. By the same token, we cannot say that they are of such symbolic significance to the average person that a breach of the peace would likely result from their public desecration. We do not, however, pass on the question whether the state flag has such significance or whether the state might

██ Thus, we must conclude that this portion of A.R.S. § 41–793, subsec. C also prohibits protected acts of symbolic speech which do not affect the state's interest in preventing breaches of the peace. This being so, the only action we may take is to strike down the entire statute as unconstitutionally overbroad, Thornhill v. Alabama, supra; Hodsdon v. Buckson, 310 F.Supp. 528 (D.Del. 1970); Note, 83 Harv.L.Rev. 844, 853–55 (1970), leaving to the legislature the enactment of a statute which properly protects the state's interest in preventing breaches of the peace.[7]

We decline to issue the injunction requested by plaintiff, without prejudice to her right to renew the request if need be. We do anticipate that the state through its officer, defendant here, will discontinue prosecution in light of our opinion. See Hodsdon v. Buckson, supra.

have some interest, property or other, in protecting its flag.

7. We would caution, however, that inclusion of a specific prohibition against desecration by burning might raise a question of specificity. "Burn", unlike, for example, "defile", does not describe an act which is invariably offensive and thus cannot have the same per se ef-

fect on which a "breach of the peace flag desecration prohibition" must be founded.

This does not mean that a public flag burner cannot be prosecuted under traditional breach of the peace statutes where, for example, the words accompanying the burning raise the entire act to the status of provocation.