473 F.2d 478
 William P. THOMS, on behalf of himself and all others
similarly situated, Plaintiff-Appellee,
v.
Richard P. HEFFERNAN, Prosecuting Attorney of the Sixteenth
Circuit Court of the State of Connecticut,
Defendant-Appellant.
 No. 98, Docket 72-1013.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1972.
Decided Jan. 8, 1973.
 
 John F. Mulcahey, Jr., New Haven, Conn., for defendant-appellant.
 William R. Breetz, Jr., Hartford, Conn., for plaintiff-appellee.
 Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This appeal to a court of appeals from the judgment of a three-judge district court declaring a Connecticut flag misuse statute unconstitutional raises several difficult questions of appellate and trial court jurisdiction and procedure, as well as the more usual first amendment problems on the merits. The decision below is reported sub nom. Thoms v. Smith, 334 F.Supp. 1203 (D.Conn.1971).
 
 I. APPELLATE JURISDICTION
 
 2
 The threshold question we have -one not argued by the parties in their briefs-relates to the jurisdiction of a court of appeals over an appeal from a three-judge court. Cf. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 153, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Borden Co. v. Liddy, 309 F.2d 871, 876 (8th Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963). The problem stated simply is whether an appeal lies to us when the three-judge court has declared the state statute unconstitutional but neither expressly granted nor denied the injunctive relief sought by the prevailing plaintiff. The problem is complicated to some extent by the fact that there apparently has been no separate judgment order signed below-rather there is a memorandum of decision signed by Chief District Judge Blumenfeld, concurred in by Circuit Judge Smith, from which District Judge Clarie dissented. Judge Blumenfeld's opinion says:
 
 
 3
 We have no reason to believe defendants will continue to enforce Sec. 53-255 upon notice of this decision; accordingly, we forbear to enter an injunction restraining them from enforcing it. Declaratory judgment may, however, enter that Section 53-255 of the Connecticut General Statutes is unconstitutional and is hereby declared void because it makes criminal that which under the Constitution may not be made a crime.So ordered.
 
 
 4
 334 F.Supp. at 1211.
 
 
 5
 Since the plaintiff originally sought injunctive relief with jurisdiction being asserted under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 1343(3), against the alleged unconstitutional "enforcement, operation or execution" of a state statute, the convening of a three-judge court was required by 28 U.S.C. Sec. 2281. If we construe the operative language of the district court's opinion as "an order granting or denying . . . an interlocutory or permanent injunction" the appellant's appeal from the district court's decision must be directly to the Supreme Court and we would be without jurisdiction to hear it. 28 U.S.C. Sec. 1253; Lee v. Roseberry, 200 F.2d 155 (6th Cir. 1952). If, however, we construe the district court's "forbearance" in granting injunctive relief as merely a postponement of decision and not a "granting or denial," appeal to us would be proper and indeed required since the district court's decision would, in effect, be a declaratory judgment on the constitutionality of the state statute.[1] See Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); see also Gunn v. University Committee to End the War in Vietnam, 399 U.S. 383, 391, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970) (White & Brennan, JJ., concurring).
 
 
 6
 The latter construction is consistent with the Supreme Court's admonition that its jurisdiction of appeals from three-judge courts is to be "narrowly construed," Goldstein v. Cox, 396 U.S. 471, 478, 90 S.Ct. 671, 24 L.Ed.2d 663 (1970), since "any loose construction of the requirements of [the predecessor of Sec. 1253 authorizing direct Supreme Court review] would defeat the purposes of Congress . . . to keep within narrow confines [the Supreme Court's] appellate docket." Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), quoted in Gunn v. University Committee to End the War, supra, 399 U.S. at 387, 90 S.Ct. 2013, and Goldstein v. Cox, supra, 396 U.S. at 478, 90 S.Ct. 671. This admonition, we think, requires us to resolve all reasonable doubts against direct appealability of a judgment to the Supreme Court.
 
 
 7
 This construction is also consistent with the obvious intent of the three-judge court in this case. The operative language of Chief Judge Blumenfeld's opinion leaves open the possibility that injunctive relief will be granted in the event that the district court was gazing into a clouded crystal ball in predicting non-enforcement of the statute by the appellant and the other defendants below. No other basis for the denial of injunctive relief appears in the opinion. Until the district court explicitly grants or denies an injunction "it is simply not possible to know with any certainty what the court has decided" and one of the "basic reasons" for the limitations Sec. 1253 places on Supreme Court review is defeated. Gunn v. University Committee to End the War, supra, 399 U.S. at 388-390, 90 S.Ct. 2013. In the present state of the case no one knows if an injunction will ever be required, let alone against whom such an injunction might run. In such circumstances appeal lies directly to us as if only a declaratory judgment and not an injunction were sought in the first instance. Cf. Kennedy v. Mendoza-Martinez, supra, 372 U.S. at 152-155, 83 S.Ct. 554; Flemming v. Nestor, 363 U.S. 603, 606-607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). In this respect, this case is unlike Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), where direct appeal to the Supreme Court lay, even though the three-judge court dismissed for lack of subject matter jurisdiction, because there the three-judge court entered a judgment "denying all relief sought by plaintiffs." 405 U.S. at 541, n. 5, 92 S.Ct. at 1116.
 
 
 8
 This case is also unlike Abele v. Markle, 342 F.Supp. 800 (D.Conn.1972) (three-judge court), where the court of appeals, as Judge Timbers' dissent points out, remanded for reconsideration by the district court of the question whether to grant injunctive relief. Abele v. Markle, Docket No. MR-5241 (2d Cir., May 9, 1972). In Abele the two-member majority of the district court were opposed on the issue of granting injunctive relief, compare 342 F.Supp. at 804-805 (Lumbard, C. J.) with id. at 812 (Newman, J.); here the majority were agreed that they should forbear. We do not think the action of the majority below was an attempt to "determine the court to which it [sent] its appellate business," in the language of the dissent. Rather, we assume that action to have been motivated by regard for comity, avoiding the direct confrontation between federal court and state prosecutorial authority that issuance of an injunction would effect by the more abstract (if equally effective) procedural step of issuing a judgment only declaring the statute unconstitutional. That this has the incidental effect of determining which appellate court has jurisdiction is an anomaly of the three-judge court statutes, note 1 supra, over which we have no control.
 
 II. FINALITY
 
 9
 Theoretically more proceedings are possible in the district court should appellant and the other defendants below seek to enforce the statute. See note 1 supra. Thus, it might be argued that the district court's declaration is not "a final judgment" in this case and that we are accordingly without jurisdiction to hear this appeal under 28 U.S.C. Sec. 1291. Of course, if this were an action instituted solely for declaratory relief the district court's decision on that relief would be final and appealable. 28 U.S.C. Sec. 2201. The fact that further proceedings leading to an injunction are possible below does not render the judgment of the district court in this case any less final.
 
 
 10
 The declaration of unconstitutionality of the statute by the district court resolves the critical issue in this litigation. There will be no further proceedings in the district court should its ruling on the constitutionality of the statute be overturned on appeal; there likely will be none should its ruling be upheld. As this case comes to us, the question of constitutionality is the controlling question. See Mills v. Alabama, 384 U.S. 214, 217-218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966); Local 438, Construction Laborers' Union v. Curry, 371 U.S. 542, 550-551, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963) (alternate holding); Pope v. Atlantic Coast Line Railroad Co., 345 U.S. 379, 382, 73 S.Ct. 749, 97 L.Ed. 1094 (1953). See generally C. Wright, Law of Federal Courts 457 (2d ed. 1970). Moreover, our determination of the correctness of the district court decision is "fundamental to the further conduct of the case." United States v. General Motors Corp., 323 U.S. 373, 377, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). See also Gillespie v. United States Steel Corp., 379 U.S. 148, 153-154, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). It would be anomalous to treat the order here as a declaratory judgment for purposes of deciding the proper court to which an appeal should be taken and then decide we have no jurisdiction to hear the appeal on the central issue in the case because the judgment lacks "finality."
 
 
 11
 The practical considerations which the Supreme Court has considered important in determining issues of finality point to a holding that the district court's order is final. Extra expense to all parties would ensue were we to remand for future proceedings in the district court. Gillespie v. United States Steel Corp., supra, 379 U.S. at 153, 85 S.Ct. 308. But even more important, there would be incalculable delay in determining the constitutionality of this statute. This additional delay is in and of itself troublesome, Mills v. Alabama, supra, 384 U.S. at 217-218, 86 S.Ct. 1434, and is ground for determining a doubtful case in favor of finality. In a case like this one, however, involving first amendment rights which are allegedly chilled by a state statute unconstitutional on its face, delay would be even more disturbing. Cf. Part V of this opinion, infra.
 
 
 12
 We thus hold that the district court's order was a "final judgment" within 28 U.S.C. Sec. 1291.
 
 III. THE PROPRIETY OF DECLARATORY RELIEF
 
 13
 Construing the district court's order solely as a declaration that the Connecticut flag statute is unconstitutional does not, however, end the preliminary issues to be decided before the constitutionality of the statute may be considered. There is an important issue whether declaratory relief is appropriate or whether appellee, who alleges his first amendment rights are "chilled" by the existence of the statute, has an adequate remedy at law in the state courts. In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), a companion case to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts are precluded from issuing declaratory judgments on the constitutionality of state statutes when there are pending criminal proceedings involving the declaratory plaintiff and challenged statute in state courts, absent a showing that the state prosecution is being brought in bad faith. The question here is whether the Samuels holding extends to the situation where there may be a pending state prosecution but it is not pending against the federal plaintiff himself.[2]
 
 
 14
 In answering this question, we recognize that Younger, Samuels and their companion cases place some restrictions on anticipatory challenges to state statutes based on their alleged "chilling" of first amendment rights, challenges first permitted by Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). See Note, Implication of the Younger Cases for the Availability of Federal Equitable Relief When No State Prosecution Is Pending, 72 Colum.L.Rev. 874, 880-89 (1972) (hereinafter cited as Columbia Note). There are suggestions in dictum in the Younger group of cases that, absent a showing of bad faith enforcement on the part of state officials, federal courts should not "reach out" and declare state statutes unconstitutional on their face. See Younger v. Harris, supra, 401 U.S. at 52, 91 S.Ct. 746 at 754 (on its face adjudication is "fundamentally at odds with the function of the federal courts in our constitutional plan"); Boyle v. Landry, 401 U.S. 77, 81, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); The Supreme Court-1970 Term, 85 Harv.L.Rev. 3, 304-05 (1971); Columbia Note, supra at 890-92. Yet, it is our view that the Supreme Court intended to leave open the question whether the requirement of bad faith or of other extraordinary circumstances evidencing irreparable injury, which the Younger group of cases affirmed for anticipatory federal court intervention in pending state suits, applies when no state criminal prosecution is pending against the federal plaintiff. See Younger v. Harris, supra, 401 U.S. at 41, 91 S.Ct. at 749, ("We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun") and at 55, 91 S.Ct. 746 (Stewart & Harlan, JJ., concurring); Samuels v. Mackell, supra, 401 U.S. at 73-74, 91 S.Ct. 764; Columbia Note, supra at 891-92. See also Lake Carriers' Association v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972) ("[I]n the absence of a pending state proceeding . . . exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive relief are met").
 
 
 15
 Furthermore persuasive policy considerations suggest that the pendency of criminal proceedings in the state courts against others should not prevent the appellee from obtaining federal anticipatory relief. See generally Perez v. Ledesma, 401 U.S. 82, 120-122, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (separate opinions). If federal anticipatory relief were not available, individuals like the appellee in this case would be forced to engage in what they believe is activity protected by the first amendment under the threat of criminal prosecution. Absent the overruling of Dombrowski v. Pfister, supra, and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the situation here, where no state prosecution is pending against the individual, is one without the reach of Younger and brethren. When there is no state prosecution pending the individual must linger in uncertainty as to the protected nature of his planned activity and he is subject wholly to the discretion of state officials. Columbia Note, supra at 892. A pending state prosecution at least provides him with a concrete way of resolving doubts about his constitutional rights, whereas such a pending prosecution against another would not necessarily have such an effect.
 
 
 16
 Additionally, federal court interference with state administration of its criminal law, the basic comity concern underlying the Younger group of cases, is minimized when no state prosecution is pending against the federal plaintiff. The state has not yet committed its criminal justice resources to the prosecution of the particular case and the allegedly "chilled" individual should be able to choose a federal forum for protection of his constitutional rights. The Supreme Court-1970 Term, supra at 307-08. A choice of a federal forum to vindicate first amendment rights is entitled to significant weight in determining the availability of anticipatory relief. See Ex parte Young, 209 U.S. 123, 165, 28 S.Ct. 441, 52 L.Ed. 714 (1908); see also Wisconsin v. Constantineau, 400 U.S. 433, 437-439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).
 
 
 17
 We thus hold that the district court could properly issue a declaration on the Connecticut statute's constitutionality.
 
 IV. JUSTICIABILITY
 
 18
 But questions concerning appellee's standing to maintain this action and the ripeness of this controversy for judicial action, which we will group together under the rubric of "justiciability," remain.[3] The question is the same under the Declaratory Judgment Act requirement that there be an "actual controversy" that is ripe for decision. 28 U.S.C. Sec. 2201. See Lake Carriers' Association v. MacMullan, supra, 406 U.S. at 506, 92 S.Ct. 1749; Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); see generally, Note, Declaratory Relief in the Criminal Law, 80 Harv.L.Rev. 1490, 1507-09 (1967). Appellant argues that appellee's position is "essentially identical" to that of the unindicted plaintiffs in Younger. Those plaintiffs had intervened in a federal court anticipatory injunction action challenging the constitutionality on its face of the California Criminal Syndicalism Act; the action, it will be recalled, had been brought by one Harris, and a state indictment under the Act had already been issued against him. The intervenors based their complaint on the fact they "felt inhibited" by the existence of the statute and the prosecution of Harris. The Supreme Court held their inhibitions were insufficient to invoke the equitable jurisdiction of the federal courts to enjoin a pending state prosecution. 401 U.S. at 42, 91 S.Ct. 746. Appellant also relies on another of the companion cases to Younger, Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), in which the Court reversed a three-judge court's injunction against enforcement of a state anti-intimidation criminal statute because none of the plaintiffs had been prosecuted or arrested under that particular statute, or specifically threatened with prosecution or arrest.
 
 
 19
 In analyzing the validity of appellant's contentions, it is necessary to examine whether there is a likelihood that state prosecutions will be brought under the challenged statute against appellee. Appellee by letter informed appellant and defendants below, who are prosecutors and police chiefs, that he owned a vest fashioned from a 3' by 5' American flag and that he "would like to be able to wear" the vest to protest American Southeast Asia policies. Three of the law enforcement officials so informed did not respond, two indicated by telephone their intent to enforce the statute, one of them saying, ". . . go ahead and do it, and, . . . if you're in violation of the statute we'll lock you up." Furthermore, there had been a series of prosecutions against persons symbolically expressing their views on various subjects, resulting in jail sentences in two instances and fines in three others. Two of these prosecutions resulting in convictions involved a peace symbol superimposed upon or substituted for the stars in the flag. Other prosecutions involving automobiles painted red and blue with white stars, red and blue shoes and shirts with white stars, and even a green and white ecology flag, were either still pending or had recently been nol prossed.
 
 
 20
 Thus, appellee faced a "credible threat of enforcement" if he fulfilled his "plausible allegations of intent or desire" to engage in first amendment protected activities. National Student Association, Inc. v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1111 (1969). Cf. Abele v. Markle, 452 F.2d 1121, 1125 (2d Cir. 1971) (threat of enforcement of state anti-abortion statute held sufficient to grant standing to medical professionals). This very real threat of enforcement against the appellee distinguishes him from the unindicted plaintiffs in Younger, who intervened to enjoin Harris's prosecution, not their own. Indeed, Justice Black stated in the opinion of the Court (401 U.S. at 42, 91 S.Ct. at 749):
 
 
 21
 If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true-either on the admission of the State's district attorney or on any other evidence-then a genuine controversy might be said to exist.
 
 
 22
 See 401 U.S. at 57-58, 91 S.Ct. 746, 27 L.Ed.2d 669 (Brennan, J., concurring). This threat of enforcement also insures appellee's interest in this suit is not "mere meddling," Note, Declaratory Relief in the Criminal Law, supra at 1508, and thus distinguishes him from the plaintiffs in Boyle. To deny appellee anticipatory relief here would in effect mean that anticipatory federal relief against overbroad state statutes could be obtained only in the instance of a showing of "bad faith, harassment, or any other unusual circumstance. . . ." 401 U.S. at 54, 91 S.Ct. at 755. Individuals who fear their conduct could be punished under such a statute would thus either suffer a "chill" or subject themselves to the risk of criminal prosecution. As we said in Part III of this opinion, we do not think the Younger group of cases goes quite so far.
 
 V. ABSTENTION
 
 23
 Appellant argues next that the district court should have abstained since the constitutional issues appellee raised below were pending at the time of suit here in the Connecticut appellate courts. In fact, they have since been decided. State v. Van Camp, 6 Conn.Cir. 609, 281 A.2d 584, certification of appeal denied, 161 Conn. 591, 280 A.2d 536 (1971) (upholding constitutionality of state statute on its face). Appellant adds that appellee, or any other member of his class, could have participated in these state court cases by filing amicus briefs both in the Connecticut courts and ultimately in the United States Supreme Court. For a variety of reasons we reject appellant's contentions.
 
 
 24
 First, although appellant has cited some older cases in which the Supreme Court ordered abstention even though a first amendment related claim was raised, cf. Douglas v. City of Jeannette, 319 U.S. 157, 163-164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), those cases were decided before the full development of the "chilling effect" doctrine in Dombrowski v. Pfister, supra, and its progeny. Since that development this circuit has recognized that "[i]n cases involving a challenge that [a state] statute is on its face unconstitutional, the delay of state court proceedings might itself cause an impermissible chilling of the very constitutional rights which the plaintiff seeks to protect." Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344, 347 (2d Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970). As we have said, comity concerns are minimized because no state prosecution is pending against this appellee. See The Supreme Court-1970 Term, supra, at 308 n.39; Columbia Note, supra at 893.
 
 
 25
 Second, appellant's argument about the availability of amicus procedures in the Connecticut state courts to appellee and members of his class misses the critical point, that appellee's choice of a federal forum to vindicate his first amendment rights must be given "due respect." Zwickler v. Koota, supra, 389 U.S. at 248, 88 S.Ct. 391, 19 L.Ed.2d 444. See also Lake Carriers' Association v. MacMullan, supra, 406 U.S. at 510, 92 S.Ct. 1749, 32 L.Ed.2d 257; Long Island Moratorium Committee v. Cahn, supra, 437 F.2d at 347. When such important national rights as first amendment freedoms are at stake, there "should not be the slightest risk of nullification by state process," C. Wright, supra at 197 citing Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 230 (1948), at least where the individual has chosen a federal forum to protect them.
 
 
 26
 Finally, there is now no practical reason to abstain. Despite appellant's abstention contentions below, the district court decided the merits of the case, and it would be "unusual indeed," Holmes v. New York City Housing Authority, 398 F.2d 262, 266 (2d Cir. 1968), were we as an appellate court not to do so. The argument for abstention had more force below because the issue of the constitutionality of the statute was then pending on the appeal of criminal convictions in the sate courts. Now that the state courts have upheld the statute on its face, State v. Van Camp, supra, there is no chance that the federal constitutional questions raised by the statute can be avoided by a state decision narrowing the statute's scope to be rendered in the near future. Thus the classical rationale for abstention, see C. Wright, supra at 197-98, and cases like Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) cited by appellant are inapplicable.
 
 
 27
 We thus hold that the district court properly decided the merits of this case.
 
 VI. THE MERITS
 
 28
 Perhaps the issue with which we have the least difficulty is that of constitutionality itself. This would not be the case as Judge Smith's concurrence below demonstrates, 334 F.Supp. at 1211-1212, were it not for Long Island Vietnam Moratorium Committee v. Cahn, supra. The Connecticut statute here involved is substantially indistinguishable from the New York statute there declared unconstitutional,[4] in that it is so broadly drawn as to proscribe protected symbolic speech (there a peace symbol was superimposed upon a representation of the flag itself), is overly vague and is not severable into flag misuse and flag defilement or destruction parts. Accord, Parker v. Morgan, 322 F.Supp. 585 (W.D.N.C.1971) (three-judge court) (North Carolina police regulation); Crosson v. Silver, 319 F.Supp. 1084 (D.Ariz.1970) (three-judge court) (Arizona state statute); Hodsdon v. Buckson, 310 F.Supp. 528 (D.Del.1970) (three-judge court) (Delaware state statute). See generally Developments in the Law-The National Security Interest and Civil Liberties, 85 Harv. L.Rev. 1130, 1138-41 (1972). Cf. Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) (statute cannot ban verbal desecration; four dissenters think it constitutional to ban physical desecration). But see Joyce v. United States, 147 U.S.App.D.C. 128, 454 F.2d 971 (1971), cert. denied, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972) (federal flag statute); Sutherland v. DeWulf, 323 F.Supp. 740 (S.D.Ill.1971) (three-judge court) (Illinois state statute); Oldroyd v. Kugler, 327 F.Supp. 176 (D.N.J.1970) (three-judge court) (New Jersey state statute); United States v. Ferguson, 302 F.Supp. 1111 (N.D.Cal.1969) (federal flag statute). Cf. Radich v. New York, 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287 (1971) (per curiam) (state conviction for physical desecration affirmed by an equally divided court). We agree with the majority of the three-judge court that the Connecticut statute in its present form is unconstitutional.
 
 
 29
 Our decision is not intended to indicate any view as to the constitutionality of a statute that might be limited to prohibition of the destruction or damaging of the flag, as distinguished from misuse.
 
 
 30
 Judgment affirmed.
 
 TIMBERS, Circuit Judge (dissenting):
 
 31
 It is with more than ordinary regret that I find myself unable to agree with Judge Oakes' characteristically perceptive majority opinion.
 
 
 32
 But I think it is high time that we call a sharp halt to the charade by which a three-judge district court, under the gloss of "forbear[ing] to enter an injunction", can determine the court to which it sends its appellate business.
 
 
 33
 Clearly the three-judge district court below, absent a claim for an injunction to restrain enforcement of the State statute on the ground of its unconstitutionality, would not have had any jurisdiction whatsoever to proceed as a three-judge district court, 28 U.S.C. Sec. 2281 (1970), and certainly no jurisdiction to enter the judgment from which the instant appeal has been taken. When a three-judge district court forbears from either granting or denying an injunction-for whatever reason-then the only jurisdictional basis for a three-judge court is gone, and it should dissolve itself.
 
 
 34
 Alternatively, I am not at all convinced that "forbearing to enter an injunction", for purposes of federal appellate jurisdiction, is not the equivalent of the denial of an injunction. It is the operative facts giving rise to an enforceable right which constitutes a "claim", Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2 Cir. 1943) (Swan, J.), and when such "claim" is squared against the relief granted or withheld by the district court's judgment, it seems to me that that determines whether injunctive relief has been granted or refused for purposes of federal appellate jurisdiction.
 
 
 35
 Hardly a year ago, the Supreme Court, responding to a challenge to its appellate jurisdiction to consider a direct appeal from a three-judge district court, where the district court did not reach the merits of appellants' claim for an injunction but dismissed for lack of subject matter jurisdiction, had no difficulty looking through the form of the judgment and determining that in substance the injunctive relief sought had been denied:
 
 
 36
 "The appellees also note that Sec. 1253 permits appeals to this Court only from orders 'granting or denying . . . an interlocutory or permanent injunction. . . .' They argue that since the three-judge court never considered whether an injunction should be granted an appeal should lie to the Court of Appeals. The three-judge court, however, entered a judgment 'denying all relief sought by plaintiffs.' We therefore have jurisdiction to consider the claims presented." Lynch v. Household Finance Corp., 405 U.S. 538, 541 n. 5 (1972).
 
 
 37
 In any event, earlier this year, another panel of our Court was confronted with an issue of appellate jurisdiction which I find indistinguishable from that confronting us in the instant case. A three-judge district court in Connecticut on April 18, 1972 held the Connecticut anti-abortion statutes unconstitutional, stating in its memorandum of decision that "[i]n holding the statutes unconstitutional, we grant only declaratory relief to this effect as there is no reason to believe the state will not obey our mandate."[1] Abele v. Markle, 342 F.Supp. 800, 804-05 (D.Conn.1972).
 
 
 38
 An appeal was taken to our Court from the judgment entered on that decision and a motion was made here for a stay of execution of the judgment pending appeal. On May 9, 1972, a panel of this Court, consisting of Chief Judge Friendly and Circuit Judges Moore and Anderson, in remanding the case to the district court to reconsider its determination not to issue an injunction, stated:
 
 
 39
 "PER CURIAM:
 
 
 40
 The three-judge district court is respectfully requested to reconsider its determination not to issue an injunction, in light of the difficult problem of appellate jurisdiction thereby created and the desirability that the question of a stay be passed upon by the Supreme Court. See Mitchell v. Donovan, 398 U.S. 427 (1970); Gunn v. University Committee, 399 U.S. 383 (1970); McCann v. Babbitz, 400 U.S. 1 (1970). Pending an opportunity for prompt reconsideration, the order granting a declaratory judgment is stayed, with leave to appellees to move to vacate the stay if the district court does not issue an injunction or if thereafter the appellants do not promptly apply for a stay to the Supreme Court." Abele v. Markle, Docket No. MR-5241 (2 Cir., filed May 9, 1972).
 
 
 41
 Upon remand, the district court on May 10 did "reconsider the propriety of injunctive relief, . . . thus possibly [to] pave the way for review of all aspects of our judgment by the Supreme Court", and accordingly concluded that "it is now necessary to protect plaintiffs from such threat of injury to their rights by the granting of injunctive relief, and a judgment granting an injunction is hereby ordered to be entered today." Abele v. Markle, Civil No. 14,291 (D.Conn., filed May 10, 1972). The district court on May 10 also denied a stay of its declaratory judgment entered on April 26[2] and of its judgment entered on May 10 denying injunctive relief.
 
 
 42
 Defendants on May 11 filed a notice of appeal to the Supreme Court of the United States which, on October 16, granted a stay pending appeal, and, on November 20, denied a motion to vacate the stay.
 
 
 43
 In the instant case, I would handle the threshold question of our appellate jurisdiction in substantially the same manner as another panel of our Court did in the Abele case. I would remand the case to the district court to reconsider its determination not to issue an injunction, failing which I would dismiss the appeal for lack of appellate jurisdiction.
 
 
 44
 Until the very serious threshold question of appellate jurisdiction is resolved, I believe that it is inappropriate for us to reach the merits of the appeal.
 
 
 45
 I therefore respectfully dissent.
 
 
 
 [1]
 If appellant and the other defendants below were to seek to enforce the statute appellee would presumably then renew his application for injunctive relief and the three-judge court would have to act and would presumably grant it, thereby giving appellant an opportunity to appeal directly to the Supreme Court under 28 U.S.C. Sec. 1253. Thus any ruling we might make could be mooted. By appealing directly to this court from the order below, however, appellant and the other defendants below may be treated as having agreed that they will not seek to enforce the statute (at least if we uphold the declaratory judgment below). This circuit has previously held such stipulations sufficient to convert actions originally seeking injunctions into actions solely for declaratory relief properly appealable to the Court of Appeals. See Long Island Vietnam Moratorium Comm. v. Cahn, 437 F.2d 344, 346 (2d Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970). The anomalous situation we have here points up the illogic of the present three-judge court statutes. Interestingly, the American Law Institute would require a three-judge court if a declaratory judgment of unconstitutionality were all that was sought. American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts Sec. 1374 (1969) and Commentary at 322-23
 We agree with the recent Report of the Study Group on the Caseload of the Supreme Court (December 1972) insofar as it states at 28-29:
 When, where and how to obtain appellate review of an order by or relating to a three-judge court is a hopelessly complicated and confused subject that in itself has produced much unnecessary litigation . . . . [R]eview of these matters has become so mysterious that even specialists in this area may be led astray.
 
 
 [2]
 In thus formulating the question, we do not ignore appellant's contentions of nonjusticiability of this case. They are discussed in Part IV of this opinion
 
 
 [3]
 We think it immaterial that the Connecticut statute originally complained against, Sec. 53-255, has during the pendency of this litigation been superseded by 28 Conn.Gen.Stat. Sec. 53-258a (Supp.1972). The later statute is identical in substance to, but calls for a greater penalty (six month maximum jail sentence changed to one year, 28 Conn.Gen.Stat. Sec. 53 a-36 (Supp.1972); $100 maximum fine changed to $1,000, 28 Conn.Gen.Stat. Sec. 53a-42 (Supp.1972)) than, the earlier one. If anything the threat to appellee is, therefore, greater now than it was before. While technically the earlier statute on which this action was based was repealed, in substance it was only amended as to penalty and the appellee's interest in the suit remains the same. See Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1678-79 (1970). Thus we may consider the case as if it were brought under the later misuse statute. The substance of both reads as follows:
 Any person who, in any manner for exhibition or display, puts or causes to be placed any inscription, picture, design, device, symbol, name, advertisement, word, character, mark or notice upon any flag, standard, color or ensign of the United States or the state flag of this state or any ensign purporting to be either of such flags, standards, colors, or ensigns or in any manner appends, annexes or affixes to any such flag, standard, color or ensign, any inscription, picture, design, device, symbol, name, advertisement, word, mark, notice or token or displays or exhibits or causes to be placed or exhibited on any flag, standard, color or ensign of the United States or the flag of this state or any flag, standard, color, or ensign evidently purporting to be either of such flags, standards, colors or ensigns, upon which in any manner is put, attached, annexed, or affixed any inscription, picture, design, device, symbol, name, advertisement, word, mark, notice or token or publicly misuses, mutilates, tramples upon or otherwise defaces, defiles or puts indignity upon any such flags, standards, colors or ensigns, whether any of such flags, standards, colors or ensigns are public or private property, shall be fined not more than one hundred dollars or imprisoned not more than six months or both, for each offense. Flags, standards, colors or ensigns, the property of or used in the service of the United States or of this state, may have inscriptions, names of actions, words, marks or symbols which are placed thereon pursuant to law or authorized regulations.
 
 
 [4]
 It is true that the New York definition of "flag" was broader, but as Judge Blumenfeld pointed out below, 334 F.Supp. at 1209 n. 14, in effect the statutes are the same. And the Connecticut statute is broad enough to apply to clothing and autos resembling the flag, the statutory term being "any flag, standard, color or ensign evidently purporting to be . . . such flag[s] . . . ." Read literally, the statute may make it dangerous in Connecticut "to possess anything red, white and blue." Parker v. Morgan, 322 F.Supp. 585, 588 (W.D.N.C.1971) (three-judge court)
 
 
 [1]
 In the instant case, the three-judge district court stated, "We have no reason to believe defendants will continue to enforce Sec. 53-255 upon notice of this decision; accordingly, we forbear to enter an injunction restraining them from enforcing it. Declaratory judgment may, however, enter that [the statute] is unconstitutional . . . ." Thoms v. Smith, 334 F.Supp. 1203, 1211 (D.Conn.1971)
 
 
 [2]
 The original judgment in Abele, unlike the instant case, did deny injunctive relief in addition to granting declaratory relief. As the district court there noted in its later decision of May 10, "[w]hen the matter was first before this court, there was not a majority in favor of injunctive relief, primarily because it was felt that the State of Connecticut would abide by the terms of the declaratory judgment." Abele v. Markle, Civil No. 14,291 (D.Conn., filed May 10, 1972)
 Defendants in Abele sought to appeal to our Court only from that portion of the original judgment which granted declaratory relief. Plaintiffs did not cross-appeal.