# No. 13,974.

## PEOPLE *v*. NAKAMURA.
### (62 P. [2d] 246)

Decided September 28, 1936.  Rehearing denied November 2, 1936.

Mr. WM. F. HAYWOOD, Mr. A. ALLEN BROWN, Mr. PAUL P. PROSSER, Attorney General, Mr. BYRON G. ROGERS, Attorney General, Mr. WALTER F. SCHERER, Assistant, for plaintiff in error.

Mr. MILTON R. WELCH, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

UNDER section 6882, Compiled Laws of 1921, an amended information, containing two counts, was filed in the district court of Delta county, charging Nakamura, an unnaturalized foreign-born resident, in the first count with unlawful possession of three pheasants, and in the second count with unlawful possession of firearms, to wit, "One shotgun, for the purpose of hunting wild game."

A plea of guilty was entered as to the first count, and Nakamura was fined $90 and costs. His motion to quash the second count was sustained by the court on the ground that section 6882, supra, is unconstitutional under sections 13 and 27 of article II of the Constitution of the state of Colorado. Nakamura was discharged and the people assign error.

Section 6882, Compiled Laws of 1921, is as follows:

"That from and after the passage of this act, it shall be unlawful for any unnaturalized foreign-born resident to hunt for or capture or kill, in this state, any wild bird or animal, either game or otherwise, of any description, excepting in defense of persons or property; and to that end it shall be unlawful for any unnaturalized foreign-born resident, within this state, to either own or to be possessed of a shotgun or rifle of any make, or a pistol or firearm of any kind. Each and every person violating any provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than twenty-five dollars ($25) nor more than two hundred and fifty dollars ($250), or by imprisonment in the county jail not less than ten (10)

days or more than three (3) months, or by both such fine and imprisonment; Provided, That in addition to the before-named penalty all guns of the above-mentioned kinds found in possession or under control of an unnaturalized foreign-born resident shall, upon conviction of such person, be declared forfeited to the state of Colorado, and shall be sold by the fish and game commissioner as hereinafter directed.''

Sections 13 and 27 of article II of the Constitution are as follows:

''Sec. 13. That the right of no person to keep and. bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.''

''Sec. 27. Aliens, who are or may hereafter become bona fide residents of this state, may acquire, inherit, possess, enjoy and dispose of property, real and personal, as native born citizens.''

The people contend that the ''right'' referred to in section 13 of the Constitution is not a personal right, but one of collective enjoyment for common defense, and that the act in question is a proper exercise of the police power.

It is apparent that the statute above quoted was designed to prevent possession of firearms by aliens, as much, if not more, than for the protection of wild game within the state. It is equally clear that the act wholly disarms aliens for all purposes. The state may preserve its wild game for its citizens, may prevent the hunting and killing of same by aliens, and for that purpose may enact appropriate laws, but in so doing, it cannot disarm any class of persons or deprive them of the right guaranteed under section 13, article II of the Constitution, to bear arms in defense of home, person and property. The guaranty thus extended is meaningless if any person is denied the right to possess arms for such protection.

Under this constitutional guaranty, there is no distinction between unnaturalized foreign-born residents and citizens.

The act permits the alien to "hunt for or capture or kill" any wild bird or animal "in defense of persons or property," but it does not, and of course cannot, fix the day or hour when such occasion might arise, therefore, if the statutes prevent the means of the enjoyment of the constitutional right and guaranty thus given, by prohibiting the alien to own or possess a gun, or the means ordinarily employed, then it clearly defeats its stated exception. It is a valid exercise of the police power for the legislature to prohibit unnaturalized foreign-born residents from hunting or killing wild game of the state, and in the exercise of such power it may distinguish between citizens of the state and aliens, and it follows that such portion of the act in question as is directed to this end is constitutional, but in so far as it denies the right of the unnaturalized foreign-born resident to keep and bear arms that may be used in defense of person or property, it contravenes the constitutional guaranty and therefore is void. "The police power of a state cannot transcend the fundamental law, and cannot be exercised in such manner as to work a practical abrogation of its provisions." *Smith v. Farr,* 46 Colo. 364, 104 Pac. 401, citing with approval *Railroad Co. v. Huesen,* 95 U. S. 465.

The defendant's motion to quash the second count of the information was properly sustained and the resulting judgment therefore is affirmed.

Mr. Justice Burke and Mr. Justice Bouck dissent.

Mr. Justice Bouck, dissenting.

I dissent from the majority opinion herein.

This case involves the second count of a criminal information filed against the defendant Nakamura. The count charged that Nakamura, being an unnaturalized

foreign-born resident of Delta county, Colorado, had unlawful possession of ''one shotgun, for the purpose of hunting wild game.''

The statute of 1919, under which the prosecution was had, provides (C. L. '21, §6882) that ''it shall be unlawful for any unnaturalized foreign-born resident to hunt for or capture or kill, in this state, any wild bird or animal, either game or otherwise, of any description, excepting in defense of persons or property; and to that end it shall be unlawful for any unnaturalized foreign-born resident, within this state, to either own or be possessed of a shotgun or rifle of any make, or a pistol or firearm of any kind.''

A motion was made by the defendant to quash the count on the ground that the criminal offense stated is charged under a statute which is alleged to be in violation of sections 13 and 27 of article 2 of the Colorado Constitution. These sections are as follows: ''Sec. 13. Right to bear arms.—That the right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.'' ''Sec. 27. Property rights of aliens.—Aliens, who are or may hereafter become bona fide residents of this state, may acquire, inherit, possess, enjoy and dispose of property, real and personal, as native born citizens.''

The trial court sustained the defendant's motion and quashed the questioned count. In doing so, it apparently assumed that the defendant's shotgun is necessarily included among arms which, under section 13 of article 2, he has ''the right   *   *   *   to keep and bear'' ''in defense of his home, person and property.'' Whether the shotgun in this particular case was such a weapon, depends upon the facts. If the possession was solely ''for the purpose of hunting wild game,'' as the information alleges, it was manifestly not in defense of home,

person or property. If on the other hand such was not the sole purpose, but the purpose was also to keep and bear the arms for defense within the meaning of our Constitution, then this fact might entitle the defendant to an acquittal. The fact might be, however, that an alien is possessed of a veritable armory of weapons, or at least of an ample supply for defense, and that a shotgun might be kept and used by him merely as a convenient means of violating the game statute under consideration, or even for the purpose of subverting the government itself.

A court ought not to presume that the legislature intended to interfere with the constitutional rights of the defendant. The legislature recognized the importance of avoiding such interference, as is shown by the express exception inserted in the act itself ("excepting in defense of persons or property"). A presumption exists as usual that the act of the legislature is constitutional, and such presumption continues until the statute is proved unconstitutional beyond a reasonable doubt.

It is earnestly contended by the defendant that the count is bad because it does not negative the exception referred to. An exception need not be pleaded. It is a matter of defense. The defendant's remedy is to introduce evidence, if he has any, tending to establish either that he is within the express statutory exception or that the circumstances disclose he is within the protection of the constitutional provision, which must of course be read into, and in connection with, the statute. See *People v. Williams*, 61 Colo. 11, 19, 155 Pac. 323, 325, and cases there cited.

I respectfully suggest that the judgment should be reversed and the case remanded with directions to vacate the order quashing the second count of the information, overrule the motion to quash this count, and proceed with arraignment and trial in the regular course of criminal procedure.

Mr. Justice Burke concurs in this opinion.