## No. 25279

## The People of the State of Colorado v. David Patten Vaughan
(514 P.2d 1318)

Decided October 1, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, Jerry W. Raisch, Assistant, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Blewitt, Bisbee & Geil, John H. Bisbee, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant, David Patten Vaughan, was arrested on a public street in Boulder wearing a pair of blue jeans on the seat of which a portion of the American flag had been sewn. In an information filed by the district attorney, it was charged that the defendant,
"did unlawfully by his acts mutilate, deface and defile a flag of the United States of America with intent to cast contempt thereupon;"
contrary to 1969 Perm. Supp., C.R.S. 1963, 40-23-3(1).[1]

In a trial to the court, the court found that the defendant was not making any speeches, and, in fact, no words were spoken by the defendant which were significant. The sole reason for the arrest was the conduct of the defendant. The trial court found the defendant guilty. For reasons hereinafter set forth, we reverse.

All fifty states and the United States Government have passed laws relating to flag desecration. Numerous courts,

---

[1] In pertinent part this statute reads: "Any person who ... shall mutilate, deface, defile, or trample upon any such flag with intent to cast contempt thereupon, either by words or act, is guilty of a misdemeanor."

both state[2] and federal,[3] have considered the application of these statutes, reaching somewhat inconsistent results. In considering the arguments of the parties, we are guided by these words of the United States Supreme Court:

"The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own. Nevertheless, we apply the limitations of the constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization. . . . [F]reedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order." *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 641, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

---

[2] *People v. Radich,* 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970), *aff'd by equally divided Supreme Court,* 401 U.S. 531 (1971). *People v. Verch,* 63 Misc.2d 477, 311 N.Y.S.2d 637 (1970). *People v. Cowgill,* 274 Cal.App.2d 923, 78 Cal.Rptr. 853, *appeal dismissed,* 396 U.S. 371 (1970). *State v. Kasnett,* 30 Ohio App.2d 77, 283 N.E.2d 636 (1972), *reversed,* 13 CRL 2288 (June 6, 1973). *State v. Saionz,* 23 Ohio App.2d 79, 52 Ohio Ops.2d 64, 261 N.E.2d 135 (1969). *State v. Bunch,* 26 Ohio Misc. 161, 54 Ohio Ops.2d 354, 268 N.E.2d 831 (1970). *State v. Turner,* 78 Wash.2d 276, 474 P.2d 91. *State v. Waterman,* 190 N.W.2d 809 (Iowa 1971). *State v. Sinniger,* 6 Or. App. 145, 486 P.2d 1303 (1971). *Commonwealth v. Lorenc,* 220 Pa. Super. 64, 281 A.2d 743 (1971). *See also* 41 A.L.R.3d 493.

[3] *Goguen v. Smith,* 471 F.2d 88 (1st Cir. 1972). *Joyce v. United States,* 454 F.2d 971 (D.C. Cir., *cert. denied,* 92 S.Ct. 1188 (1971)). *Hoffman v. United States,* 445 F.2d 226 (D.C. Cir. 1971). *Long Island Vietnam Moratorium Committee v. Cahn,* 437 F.2d 344 (2d Cir. 1970). *United States v. Ferguson,* 302 F. Supp. 1111 (N.D. Cal. 1969). *Sutherland v. DeWulf,* 323 F. Supp. 740 (S. D. Ill. 1971). *Crosson v. Silver,* 319 F. Supp. 1084 (D. Ariz. 1970). *Hodsdon v. Buckson,* 310 F. Supp. 528 (D. Del. 1970). *Parker v. Morgan,* 322 F. Supp. 585 (W.D.N.C. 1971); *Thoms v. Smith,* 334 F. Supp. 1203 (D. Conn. 1971), *aff'd sub nom, Thoms v. Heffernan,* 473 F.2d 478 (2d Cir. 1973).

The defendant challenges the validity of the statute on three grounds: (1) it is unconstitutional on its face in that it constitutes an invasion of his right of free expression guaranteed to him by the First and Fourteenth Amendments to the United States Constitution; (2) it is overbroad in that it lends itself to improper application in the area of constitutionally protected expression; and (3) it is so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application.

I.

The threshold question is whether the acts and conduct of defendant, under the circumstances here, constitute "speech" within the meaning of that term in the First Amendment to the United States Constitution.[4] In order to determine whether defendant's actions are "speech," we must look to judicial interpretation of the First Amendment by the United States Supreme Court.

The peculiar symbolic nature of the United States flag was noted by the Supreme Court in *Halter v. Nebraska,* 205 U.S. 34, 43, 27 S.Ct. 419, 422, 51 L.Ed. 696 (1907):

"[T] he flag is the symbol of the Nation's power, the emblem of freedom in its truest, best sense. It is not extravagant to say that to all lovers of the country it signifies government resting on the consent of the governed; liberty regulated by law; the protection of the weak against the strong; security against the exercise of arbitrary power; and absolute safety

---

[4] U.S. Const. amend. I:

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; *or abridging the freedom of speech,* or of the press; or the right of the people peaceably to assemble and to petition the government for a redress of grievances." (Emphasis added.)

It has long been recognized that the protections of the First Amendment are restraints on state action through the Fourteenth Amendment. *See Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); *Whitney v. California,* 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927).

for free institutions against foreign aggression."

The continuing vitality of the flag as a symbol in today's world is unquestioned. It drapes the caskets of all who have served in the armed forces and of our national leaders, and signifies our national presence in foreign lands and on the moon. *See Joyce v. United States,* 454 F.2d 971 (D.C. Cir. 1971) *cert. denied* 92 S.Ct. 1188 (1972).

*West Virginia Board of Education v. Barnette, supra,* which held that a state could not compel a flag salute from students as a condition of attendance in the public schools discussed the communicative nature of conduct in relation to the flag: "There is no doubt that in connection with the pledges, the flag salute is a form of utterance. Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution or personality, is a short-cut from mind to mind .... Symbols of state often convey political ideas just as religious symbols come to convey theological ones. ... A person gets from a symbol the meaning he puts into it, and what is one man's comfort and inspiration is another's jest and scorn." 319 U.S. 624, 632, 633.

*See also Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

More recently in *Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Supreme Court held that the wearing of black armbands by school children to protest United States' involvement in Vietnam was "closely akin to pure speech" and that such symbolic conduct was entitled to comprehensive protection under the First Amendment. The symbolic conduct in *Tinker* has two analytical aspects which make it "akin to pure speech." First, it was an intentional effort at communication. Secondly, it was widely understood as having a communicative content.

■■ When a primary symbol such as the American flag is the object of public activity (other than purely custodial activity) it, by its very nature, conveys a message. Although the content of such expression depends upon the perceptions and values of the viewer, it is nonetheless "closely akin to

pure speech," and is expression by the exhibitor which is protected by the First Amendment. *Goguen v. Smith,* 471 F.2d 88 (1st Cir. 1972); *Crosson v. Silver,* 319 F. Supp. 1084 (D. Ariz. 1970). *See also Long Island Vietnam Moratorium Committee v. Cahn,* 437 F.2d 344 (2d Cir. 1970); *Hodsdon v. Buckson,* 310 F. Supp. 528 (D. Del. 1970); *Thoms v. Smith,* 334 F. Supp. 1203 (D. Conn. 1971), *aff'd sub nom, Thoms v. Heffernan,* 473 F.2d 478 (2d Cir. 1973). Note, *Symbolic Conduct,* 68 Colum. L. Rev. 1091 (1968). Note, *Freedom of Speech and Symbolic Conduct: The Crime of Flag Desecration,* 12 Ariz. L. Rev. 71 (1970).

■ Where a statute proscribes certain acts or conduct when done with the specific intent to cast contempt on the flag, the statute necessarily contemplates that the actor's intellect will be brought to bear upon such acts or conduct. In other words, it is obvious that such statute was not designed to proscribe mutilating or misusing the flag per se. There is no violation of the statute where the proscribed acts are the result of thoughtlessness, inadvertence, accident or the like. A violation occurs only when the specific intent accompanies the acts or conduct. Thus, as noted above, a violation occurs only when the surrounding circumstances manifest the exercise of the intellect in such a manner that inferences may be drawn therefrom that the acts or conduct were done with the specific intent of casting contempt on the flag. It is this manifestation of the exercise of the intellect by the proscribed conduct which constitutes "symbolic speech."

■ From the trial court's finding of guilt we must conclude that the defendant's actions were committed with the specific intent to cast contempt upon the flag. To make this finding the trial court must have found that his conduct manifested an expressive intent and a communicative content. From this we conclude that defendant's conduct was "symbolic speech" and, consequently, is protected "speech" under the First Amendment.

The flag affixed to the seat of the defendant's pants was a gesture of defiance and dissent to those who revere the flag as

a symbol of the blessings of American citizenship,[5] and evidences an intent to communicate an attitude of political antagonism to those who support legitimate authority represented by the flag. Just as some citizens paste flag decals on their car windows to indicate their support of certain political philosophies, defendant adorned the seat of his jeans with a flag to indicate his contempt for those things which the flag symbolizes.

The ideas expressed by defendant's conduct may seem to some to be juvenile and inarticulate, and perhaps his actions are subject to interpretations other than we have given, but this does not strip his "speech" of constitutional protection. The First Amendment is not the exclusive property of the educated and politically sophisticated segment of our population; it is not limited to ideas capable of precise explication. In the words of Mr. Justice Harlan:

"[W]ords are often chosen as much for their emotive as their cognitive force. We cannot sanction the view that the Constitution, while solicitous of the cognitive content of individual speech has little or no regard for that emotive function which, practically speaking, may often be the more important element of the overall message sought to be communicated." *Cohen v. California,* 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

The state can no more censor ideas on the basis of their intellectual or artistic merit than on the basis of their political content.

## II.

Having found that defendant's conduct was expression "closely akin to pure speech" protected by the First Amendment, we must now determine whether the state may constitutionally impose criminal sanctions upon such protected expression.

At the outset we emphasize that our ruling is limited to the factual situation presented by this case: a prosecution

---

[5] See the language quoted from *Halter v. Nebraska, supra,* at p. 3.

48

for mutilating the flag with intent to cast contempt thereupon. We do not reach the question of the state's power to prohibit flag mutilation without regard to the actor's motive. It is well settled that the state has an overriding interest in prohibiting conduct or speech which incites others to unlawful conduct or provokes retaliatory actions amounting to a breach of the peace. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Thus, a statute narrowly drawn to implement such compelling state interests would withstand constitutional scrutiny even though it has the effect of proscribing some limited forms of expression.

In considering the state's argument that the statute in question furthers the legitimate state interests of averting breaches of the peace, preserving the dignity of the symbols of our· democracy, and controlling rebellious behavior by setting limits for proper dissent, we must remember the preferred place given in our constitutional scheme to the indispensable democratic freedoms secured by the First Amendment. *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945). First Amendment freedoms are the cornerstone of our democracy and the source of the strength and vitality of our society. It is the unfettered and public discussion of ideas of every sort that keeps the institutions of government responsive to the people. *See Whitney v. California,* 274 U.S. 357, 372, 47 S.Ct. 641, 71 L.Ed. 1095 (1927), (Brandeis, J., concurring).

Recognition of the delicate and vulnerable nature of these freedoms and the fact that they "need breathing space to survive" *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), mandates that we give the closest scrutiny to state action which has the effect of curtailing or "chilling" free expression. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Not only must a statute infringing upon expression be justified by an overriding state interest, but such a statute may be applied only where there is a clear and present danger to such interest. *Schenck v. United States,* 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *West Virginia State Board of Education v.*

*Barnette, supra.*

█ Analyzing the facts of this case in light of the First Amendment cases of the United States Supreme Court, we hold that the portion of the statute in question is unconstitutional on its face. The section challenged, in effect, limits the expression of ideas about the flag to patriotic expressions acceptable to those charged with the enforcement of the criminal law. It attempts to impress a symbolic orthodoxy upon the people of Colorado. The state asserts that the statute furthers the legitimate interests of preserving the symbols of our democracy and setting limits of proper dissent. We hold these interests to be in direct conflict with the fundamental values protected by the First Amendment. Because of the preferred position of freedom of speech in the United States Constitution, these interests are insufficient to uphold the validity of the statute.

The final argument advanced by the state is that the statute is designed to avert breaches of the peace. However, the section in question makes no mention of breaches of the peace. It proscribes only words or acts which are done with the intent to cast contempt upon the flag. Had the general assembly intended to prevent or punish breaches of the peace involving the flag, they would have given some indication of that purpose in the statute. We cannot read such a limitation into the statute when the general assembly has shown only an intent to punish words or acts contemptuous of the flag.

The state also relies upon two recent decisions of the United States Supreme Court, *Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In *Street,* the court did not reach the issue presented by this case. The court there held only that a person could not be punished for casting contempt upon the flag by words.

*O'Brien* presented a case in which the defendant was convicted for knowingly burning his Selective Service Registration Certificate. He did not deny that he had burned the certificate, but argued that his conduct was "symbolic speech" in that he was attempting to persuade others to

adopt his anti-war beliefs. The court assumed that the defendant's conduct was symbolic speech and stated as follows:

"This court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms . . . .

[W]e think it clear that a governmental regulation is sufficiently justified if it is within the constitutional power of the Government, if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. 367, 376, 377.

This case is distinguishable from *O'Brien* in at least two respects. First, *O'Brien* dealt with a situation where "speech" and "nonspeech" elements were combined in the same course of conduct. Here we have a silent, passive expression of opinion by act which we have found to be "closely akin to pure speech." The minimal "nonspeech" element of defendant's conduct makes it questionable if the *O'Brien* analysis is applicable at all. Secondly, the statute in *O'Brien* was limited to the noncommunicative aspect of the defendant's conduct, and was designed to assure the smooth and efficient functioning of the selective service system. If we assume that *O'Brien* is applicable, we note that the statute in question here penalizes and thus in large part prohibits the expression of a particular range of ideas about the American flag and through it communication about the present political life of our society. Thus, under the third part of the test set out above, the unrelatedness of the governmental interest to the suppression of free expression, we see that the statute attempts to preserve the dignity of the symbols of government by restricting the scope of expression with respect to such symbols. We have here a situation where the statute in question operates as a direct restraint upon free expression.

The situation here is like that presented in *Schacht v.*

*United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), where a federal statute which permitted the portrayal of a member of the armed forces in a theatrical production "if the portrayal does not tend to discredit that armed force" was held to be an unconstitutional abridgment of freedom of speech.

The government cannot penalize what it cannot constitutionally compel. *West Virginia State Board of Education v. Barnette, supra; Hodsdon v. Buckson, supra.* The dangers of governmental censorship in any form were well expressed by Mr. Justice Jackson.

"Those who begin coercive elimination of dissent soon find themselves exterminating dissenters. Compulsory unification of opinion achieves only the unanimity of the graveyard. It seems trite but necessary to say that the First Amendment to our constitution was designed to avoid these ends by avoiding these beginnings .... Authority here is to be controlled by public opinion, not public opinion by authority." *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 641 (1943).

Judgment reversed and the cause remanded with directions to dismiss the information filed against the defendant.

MR. JUSTICE GROVES specially concurs.

MR. JUSTICE GROVES specially concurring:

After the court declared the statute unconstitutional on its face, it was unnecessary to reach the question as to whether the acts of the defendant were constitutionally protected as free expression. It is the latter proposition announced by the court with which I disagree.

While I revere the flag, my disagreement does not stem from any patriotic or emotional state of mind.

The record is devoid of any reason why the defendant had contempt for the symbol of our country. There would have been an entire different case if he had been carrying a sign reading — or if he had testified in court — "I defecate upon the United States because it will not attempt to cure environmental problems."

I am unaware of any ruling of the United States Supreme

Court that defilement of the flag showing contempt therefor *without any particular reason* is protected free expression. Until that tribunal advises us otherwise, I would say that, in order for an act or statement to be protected by the First Amendment, there must be some spark of intellect — some indicia of thought — shown as a basis for the contempt directed at the nation's symbol. The spark or indicia of thought need not be sound or meaningful to us, but at least the defendant must have a particular basis or bases for his contempt for the United States. Defilement merely to show an attitude against the United States, without alleged reason, should not be enough to gain constitutional protection.