Donald T. TRINEN, Plaintiff–Appellant,

v.

CITY AND COUNTY OF DENVER, Defendant–Appellee.

No. 00CA2126.

Colorado Court of Appeals, Div. II.

Feb. 14, 2002.

Certiorari Denied Sept. 9, 2002.

Hart & Trinen, LLP, Donald T. Trinen, Denver, Colorado, for Plaintiff-Appellant.

J. Wallace Wortham, Jr., City Attorney, Kurt G. Stiegelmeir, Assistant City Attorney, James C. Thomas, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge PLANK.

In this declaratory judgment action challenging the validity of certain Denver weapons ordinances, plaintiff, Donald Trinen, appeals the summary judgment in favor of defendant, the City and County of Denver. We affirm.

The challenged ordinances are Denver Revised Municipal Code §§ 38–117 and 38–118. Trinen operates a place of business in Denver. It is undisputed that Trinen wishes to carry an unconcealed firearm on his person in Denver and to carry a concealed firearm in a motor vehicle in Denver, and that these activities, subject to certain exceptions, are prohibited by the ordinances. The City does not dispute that Trinen has standing to bring this action. *See DiLeo v. Board of Regents of University of Colorado,* 196 Colo. 216, 590 P.2d 486 (1978).

Section 38–117 provides in pertinent part:
(a) It shall be unlawful for any person, except a law enforcement officer in the performance of duty, to wear under their clothes, or concealed about their person any dangerous or deadly weapon....
(b) It shall be unlawful for any person, except a law enforcement officer in the performance of duty, to carry, use or wear any dangerous or deadly weapon....

Section 38–118 provides the following affirmative defenses to the offenses described in § 38–117:
(a) It shall be an affirmative defense to charges brought under section 38–117(a) or 38–117(b) that the weapon is or was carried by a person:
(1) In a private automobile or other private means of conveyance for lawful protection of their or another's person or property, when there is a direct and immediate threat thereto, while traveling away from the area of their residence or business;
(2) In their own dwelling, or place of business, or on property owned or under their control at the time of the act of carrying such weapon; or
(3) After they were issued a written permit to carry a weapon by the chief of police of any city, mayor of a town or sheriff of a county; and the carrying of such weapon is within the terms of such permit.
(b) It shall be an affirmative defense to charges brought under section 38–117(b) that the weapon is or was carried by such person:
(1) In defense of home, person or property, when in such home when there is a direct and immediate threat thereto;
(2) In aid of the civil power when thereto legally summoned;
(3) For use in the course of a bona fide hunting trip for wild game, or for transportation in the legitimate sporting use of such weapons, including shooting matches or other target shooting, or trap or skeet shooting; all such weapons being so used shall be unloaded when carried or transported to or from such hunting trip or place of sporting use;
(4) When such person is a collector or licensed dealer displaying or transporting such weapon for display or sale, or a citizen transporting such weapon for purpose of sale or repair to or from a place of sale or repair; all firearms so displayed or transported shall be unloaded at all times;
(5) When such person is a member of the armed forces of a state or of the federal government when engaged in the lawful performance of duty; or
(6) While moving personal property, including such weapon, from an old residence to a new residence.

Ruling on cross-motions for summary judgment in which the parties agreed there was no dispute of material fact, the trial

court upheld the validity of the ordinances. This appeal followed.

## I.

Trinen first contends that § 38–117(b) is so broad as to abrogate the state constitutional right to bear arms. We disagree.

■ We review *de novo* the constitutionality of a municipal enactment. *See General Motors Corp. v. City & County of Denver*, 990 P.2d 59 (Colo.1999).

Article II, § 13 of the Colorado Constitution provides:

> The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

■ An ordinance is presumed to be constitutional, and the party attacking it must establish its unconstitutionality beyond a reasonable doubt. *People ex rel. City of Arvada v. Nissen*, 650 P.2d 547 (Colo.1982). If an enactment can reasonably be construed so as to harmonize it with the constitution, that construction should be preferred. *People v. Ford*, 193 Colo. 459, 568 P.2d 26 (1977).

■ When a legislative enactment infringes on a fundamental right, the enactment, in order to be constitutional, must be necessary to promote some compelling governmental interest. However, when no fundamental right is implicated, the legislation is evaluated under the rational basis test, which requires that the enactment bear some reasonable relationship to a legitimate governmental interest. *People v. Young*, 859 P.2d 814 (Colo.1993).

■ A governmental purpose to control or prevent certain activities that may be constitutionally subject to regulation under the police power may not be achieved by means that sweep unnecessarily broadly and thereby invade the area of protected freedoms. Even though legitimate and substantial, the governmental purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. *Lakewood v. Pillow*, 180 Colo. 20, 501 P.2d 744 (1972).

■ A city or state may not, in the name of police power, enact legislation that renders constitutional provisions nugatory. *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975). However, the right to bear arms is not absolute, and a city or state may regulate the exercise of the right under its police power so long as the exercise of that power is reasonable. *Robertson v. City & County of Denver*, 874 P.2d 325 (Colo.1994).

■ In *Robertson, supra*, the supreme court did not expressly state whether the right to bear arms is a fundamental right. However, by requiring that restrictions on the right be only reasonable, rather than necessary, the court essentially applied the rational basis test in evaluating the constitutionality of a city ordinance that implicated the right to bear arms. Therefore, we conclude that the court implicitly found that the right to bear arms is not a fundamental right. *See People v. Young, supra*.

Trinen does not contest the right of Denver, a home rule city, to regulate firearms in the interest of public safety. He asserts, however, that the reasoning in *Lakewood v. Pillow, supra*, compels the conclusion that § 38–117(b) is unconstitutionally overbroad. We conclude otherwise.

In *Pillow*, the supreme court found unconstitutional an ordinance that prohibited the possession of weapons outside the home, reasoning that the ordinance was overbroad because it effectively prohibited certain businesses and activities that could not reasonably be made unlawful under the police power. Specifically, the court noted that the ordinance would prohibit gunsmiths, pawnbrokers, and sporting goods stores from carrying on a substantial part of their business, prohibit the transportation of guns to and from such businesses, and prohibit the possession for self-defense of a firearm in a vehicle or place of business.

Here, in contrast, the affirmative defenses provided by § 38–118 expressly allow the activities the *Pillow* court stated could not be

made unlawful. Accordingly, we do not find that case dispositive.

### A.

Trinen argues that a constitutional right should not be relegated to the status of an affirmative defense because then the right can be exercised only at the cost of a criminal trial. We are not persuaded.

In *People v. Ford, supra,* the supreme court upheld a statute prohibiting the possession of weapons by convicted felons, stating that a defendant could raise as an affirmative defense that the purpose of the possession was the defense of home, person, and property. Thus, the constitutional right to bear arms has been accorded the status of an affirmative defense.

Further, a number of statutes and ordinances have been held to be constitutional, such as those relating to obscenity, picketing and leafleting, and have required that raising First Amendment protections as a defense in criminal proceedings. Consequently, there is nothing unusual about having to raise a constitutional argument in defense of a criminal proceeding. *See People v. Vaughan,* 183 Colo. 40, 514 P.2d 1318 (1973).

Our conclusion is further supported by the minimal burden required to establish an affirmative defense. A defendant is merely required to present some credible evidence supporting applicability of the defense. Once the defense is raised, the prosecution must prove the guilt of the defendant as to the issue of the affirmative defense, as well as all other elements of the offense beyond a reasonable doubt. Section 18-1-407, C.R.S. 2001.

Additionally, the presence of affirmative defenses in § 38-118 militates against unreasonable application of § 38-117.

▮ Therefore, we conclude that relegating the assertion of a constitutional right to an affirmative defense does not render a statute or ordinance per se invalid.

### B.

▮ Trinen also argues that the language in § 38-118(a)(1) requiring a "direct and im-

mediate threat" is too restrictive. We disagree.

When liberally construed, the language "direct and immediate threat" requires some real identifiable and substantial justification for carrying a gun away from one's home. Absent such a qualifier, anyone could carry a gun about Denver and claim that it was for self-protection. Section 38-117 reflects the Denver City Council's determination that such practices endanger public safety and that it is reasonable to allow citizens to exercise their right to bear arms by obtaining a permit. Thus, the constitutional right has not been rendered nugatory. *See People v. Blue, supra.*

Section 38-117(b) indubitably places restrictions on the constitutional right to bear arms. However, in our view, the ordinance is a reasonable exercise of the police power, and Trinen has not met his burden of establishing beyond a reasonable doubt that the restrictions are so severe as to render the ordinance unconstitutional.

### II.

Trinen next contends that § 38-117(a), at least as it applies to carrying a concealed weapon in a motor vehicle, is void because it is preempted by state statute. Again, we disagree.

▮ The Home Rule Amendment to the Colorado Constitution grants home rule municipalities, such as Denver, plenary authority to regulate issues of local concern. Colo. Const. art. XX, § 6; *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30 (Colo.2000). If, on a matter of local concern, a home rule city enacts an ordinance that conflicts with a state statute, the ordinance takes precedence over the statute. If instead the matter is one of statewide concern, a home rule city may legislate in that area only if the constitution or a statute authorizes the legislation. If the matter is one of mixed local and statewide concern, a home rule provision and a state statute may coexist if the measures can be harmonized. If the home rule provision conflicts with the state statute, however, the statute supersedes the home rule provision. *Town of*

*Telluride v. Lot Thirty–Four Venture, L.L.C., supra.*

Here, the parties agree that the subject matter of § 38–117 is a matter of mixed local and statewide concern. Thus, the question is whether the ordinance can be harmonized with the state statute at issue.

As pertinent here, § 18–12–105, C.R.S. 2001, which makes carrying concealed weapons an offense, provides:

(2) It shall not be an offense if the defendant was ...

(b) A person in a private automobile or other private means for conveyance who carries a weapon for lawful protection of such person's or another's person or property while traveling....

In 2000, the General Assembly enacted a statute entitled "Limitation on local ordinances regarding firearms in private vehicles," which provides:

(1) The general assembly hereby finds that:

(a) A person carrying a weapon in a private automobile or other private means of conveyance for lawful protection of such person's or another's person or property, as permitted in sections 18–12–105(2)(b) and 18–12–105.5(3)(c), may tend to travel in or through different county, city and county, and municipal jurisdictions en route to the person's destination;

(b) Inconsistent laws exist in local jurisdictions with regard to the circumstances under which weapons may be carried in automobiles and other private means of conveyance;

(c) This inconsistency creates a confusing patchwork of laws that unfairly subjects a person who lawfully travels with a weapon in or through one jurisdiction to criminal penalties because he or she travels into or through another jurisdiction;

(d) This inconsistency places citizens in the position of not knowing when they may be violating local laws while traveling in, through, or between different jurisdictions, and therefore being unable to avoid committing a crime.

(2)(a) Based on the findings specified in subsection (1) of this section, the general assembly concludes that the carrying of weapons in private automobiles or other private means of conveyance for lawful protection of a person's or another's person or property while traveling into or through a municipal, county, or city and county jurisdiction, regardless of the number of times the person stops in a jurisdiction, is a matter of statewide concern and is not an offense.

(b) Notwithstanding any other provision of law, no municipality, county, or city and county shall have the authority to enact or enforce any ordinance or resolution that would restrict a person's ability to travel with a weapon in a private automobile or other private means of conveyance for lawful protection of a person's or another's person or property while traveling into or through a municipal, county, or city and county jurisdiction, regardless of the number of times the person stops in a jurisdiction.

Section 18–12–105.6, C.R.S.2001.

Thereafter, in order to comport with § 18–12–105.6, Denver amended § 38–117 by adding the following subsection:

(f) It shall not be an offense under 38–117(a) or 38–117(b) if the person is carrying the weapon concealed within a private automobile or other private means of conveyance, for lawful protection of such person's or another person's person or property, while travelling into or through the city to or from another jurisdiction, regardless of the number of times the person stops in the city or the other jurisdiction ....

Nonetheless, Trinen argues that § 38–117(a) is preempted by § 18–12–105(2)(b) because § 38–117(f) allows one to carry a concealed weapon in a private vehicle only when traveling into or through Denver, not when traveling wholly within city limits. We are not persuaded.

▇▇▇▇ A statute should be given a construction that will render it effective in accomplishing the purpose for which it was enacted. In determining the scope and effect of a statute, a court must seek out the

intent of the General Assembly. *People v. Gross,* 830 P.2d 933 (Colo.1992).

In § 18–12–105.6, the General Assembly referred to § 18–12–105(2)(b) and made clear it wanted only to limit, not eliminate, local ordinances regulating the carrying of weapons in private vehicles. This intent is reflected in both the title of and the statement of legislative purpose in § 18–12–105.6. Additionally, the use of the limiting language "into or through" in § 18–12–105.6(2)(a) and (2)(b) reflects the General Assembly's intent not to restrict local weapons ordinances insofar as they apply to travel wholly within local jurisdictions. Finally, in § 18–12–105.6(2)(a) the General Assembly restricted its statement of statewide concern to situations in which a person is traveling "into or through" local jurisdictions.

Taken together, these considerations convince us that § 18–12–105.6 clarifies the scope of § 18–12–105(2)(b) and indicates the General Assembly's intent that local ordinances on carrying weapons in private vehicles be preempted only insofar as they conflict with the provisions of § 18–12–105.6.

Section 38–117(f) incorporates the language of § 18–12–105.6 and ensures that behavior protected by the latter is not prohibited by § 38–117(a). Accordingly, we find that § 38–117(f) harmonizes § 38–117(a) and § 18–12–105(2)(b). Thus, contrary to Trinen's contention, § 38–117(a) is not preempted, and the trial court did not err in upholding its validity.

The judgment is affirmed.

Judge MARQUEZ concurs.

Judge ROY concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

I concur that the Denver ordinance complies with § 18–12–105, C.R.S.2001, relating to transporting a weapon in a private automobile, but I conclude that the ordinance is unconstitutional because it is overbroad and infringes on a constitutionally protected right. Therefore, I dissent.

I have concluded that the ordinance is overbroad as it prohibits conduct that, in my view, is clearly protected by article II, section 13, of the Colorado Constitution. The primary enumerated affirmative defense to carrying a firearm openly on the person or in a vehicle is narrower than the constitutionally protected purposes of protecting home, person, or property. That is, the firearm can be carried only to protect home, person, or property from "a direct and immediate threat thereto." Denver Rev. Mun.Code 38–118(a)(1) and (b)(1).

The Colorado Constitution recognizes certain natural and inalienable rights. Article II, section 3, of the Constitution provides:

> All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

These rights include the right to defend and protect lives, liberties, and property. They are recognized, not granted, by the Constitution and have their origin in nature independent of any express provision of law. *Colorado Anti–Discrimination Commission v. Case,* 151 Colo. 235, 380 P.2d 34 (1962)(right to purchase a home unfettered by discrimination is an unenumerated inalienable right). These "natural, essential and inalienable rights," are not absolute and are subject to the reasonable exercise of the police power. *People v. Brown,* 174 Colo. 513, 485 P.2d 500 (1971)(there is no constitutionally guaranteed right to drive on highways which cannot be limited).

Article II, section 13, of the Colorado Constitution states:

> The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

While the provision speaks in absolute terms, the right to keep and bear arms is not a fundamental one. *Robertson v. City &*

*County of Denver,* 874 P.2d 325 (Colo.1994)(tracing the history of Colorado cases discussing the nature of the right to bear arms). The right to keep and bear arms is also subject to reasonable regulation under the police power so long as the purpose of the possession is not constitutionally protected. *People v. Ford,* 193 Colo. 459, 568 P.2d 26 (1977); *People v. Pflugbeil,* 834 P.2d 843 (Colo.App.1992).

Thus, a statute criminalizing the possession of a firearm by persons convicted of certain felonies was upheld based on the demonstrated unfitness of such persons to be entrusted with dangerous instrumentalities, *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975)(constitutionally protected purposes for possession were not asserted); an ordinance prohibiting the possession of assault weapons is constitutional, *Robertson v. City & County of Denver, supra;* a statute prohibiting possession of firearms by intoxicated persons is a valid exercise of the police power and is constitutional, *People v. Nakamura,* 99 Colo. 262, 62 P.2d 246 (1936); and a statute making the possession, use, or availability of a deadly weapon a sentence enhancer is constitutional, *People v. Atencio,* 878 P.2d 147 (Colo.App.1994). However, a statute prohibiting alien residents from owning or possessing firearms has been held unconstitutional because it denies them the constitutional right to keep and bear arms in defense of home, person, or property. *People v. Nakamura, supra.*

The Denver ordinance prohibits the possession of "dangerous or deadly weapons," a defined term considerably broader than the possession of "arms," which apparently is limited to firearms. "Dangerous or deadly weapons" include, but are not limited to, any pistol, revolver, rifle, shotgun, machine gun, air gun, gas operated gun, spring gun, sling shots, blackjacks, nunchaku, switchblade knives, gravity knives, and other implements.

Here, we are concerned with "arms," which is limited to pistols, revolvers, rifles, and shotguns the keeping and bearing of which is explicitly protected when carried on the person in an open and clearly visible manner, or in an automobile or other private means of conveyance for the purpose of protecting home, person or property.

In *City of Lakewood v. Pillow,* 180 Colo. 20, 501 P.2d 744 (1972), the city adopted an ordinance that criminalized the possession, carrying, or use of specified implements, including firearms, except in one's domicile. The supreme court invalidated the ordinance as unconstitutional because it prohibited protected activities. The court stated, in part:

An analysis of the foregoing ordinance reveals that it is so general in its scope that it includes within its prohibitions the right to carry on certain businesses and to engage in certain activities which cannot under the police powers be reasonably classified as unlawful and thus, subject to criminal sanctions. As an example, we note that this ordinance would prohibit gunsmiths, pawnbrokers and sporting goods stores from carrying on a substantial part of their business. Also, the ordinance appears to prohibit individuals from transporting guns to and from such places of business. Furthermore, it makes it unlawful for a person to possess a firearm in a vehicle or in a place of business for the purpose of self-defense. Several of these activities are constitutionally protected. Colo. Const. art. II, § 13. Depending upon the circumstances, all of these activities and others may be entirely free of any criminal culpability yet the ordinance in question effectively includes them within its prohibitions and is therefore invalid.

*City of Lakewood v. Pillow, supra,* 180 Colo. at 23, 501 P.2d at 745.

The Denver ordinance prohibits or criminalizes the mere carrying of firearms. It then accommodates those lawful purposes recognized by the supreme court in *City of Lakewood v. Pillow, supra,* and the additional restriction recently imposed by § 18–12–105, C.R.S.2001, relating to transporting a weapon in a private automobile, by means of affirmative defenses. That is, it is an affirmative defense to the criminal offense that defendant was: (1) in his or her domicile; (2) in his or her place of business; (3) carrying the weapon in defense of home, person, or property *when there is a direct and immediate threat thereto;* (4) hunting wild game or

engaging in legitimate sporting use and transportation for those purposes; (5) a licensed dealer or collector transporting the weapon for sale or repair; (6) a member of the armed forces in performance of their duty; and (7) moving the weapon from one residence, but not business location, to another.

Denver thus perceives the list of protected conduct contained in *City of Lakewood v. Pillow, supra,* as exhaustive, notwithstanding the phrase "among others," used by the court. While the list of protected conduct includes possession of a weapon in a vehicle and place of business for self-defense, it does not expressly include the right to keep and bear arms in defense of home, person and property, which the supreme court in *Pillow* otherwise recognized and is explicit in the constitution.

At the outset it should be observed that the requirement that carrying a firearm be in response "to a direct and immediate threat" to home, person, or property has no counterpart in the constitution in either section 3 or section 13 of article II. The word "direct" connotes that the threat be "immediate; proximate; by the shortest course; without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of indirect." *Black's Law Dictionary* 459 (6th ed. 1990). The word "immediate" means "[p]resent; at once; without delay; not deferred by any interval of time" and "denotes that action must be taken either instantly or without any considerable loss of time." *Black's Law Dictionary, supra,* at 749.

The affirmative defense is, therefore, limited to those threats that are imminent, identified, and presumably communicated to the citizen, and are of the type and nature that might normally be reported to the authorities and with respect to which other precautions might be taken. The affirmative defense is not available to persons with a heightened, but generalized, concern for their own or other's safety as might be occasioned by being engaged in a controversial profession, activity, or event; holding controversial views, speaking out on controversial issues; transporting valuable property; having ce-lebrity status or otherwise attracting excessive unwanted attention; entering a known high-crime area; making deliveries at night or in high crime areas; or being placed on high alert of a possible terrorist attack. The affirmative defense is also not available to persons who must confront a person, or group of persons, with respect to whom they have a good faith and justified fear of harm for which they cannot articulate any "direct and immediate threat."

In addition, the structure of the ordinance precludes law-abiding and peaceful citizens from having a firearm available in the event they are suddenly and unexpectedly confronted with a life-threatening situation requiring the lawful use of deadly force in self-defense. *See* § 18–1–704, C.R.S.2001 (authorizing deadly physical force in self-defense, or in the defense of another, without retreat when there is a reasonable belief that a lesser degree of force would be inadequate).

These circumstances and others arise in the lives of law-abiding citizens, and, in my view, form a constitutionally protected basis for openly carrying a firearm on ones person or in a motor vehicle. Because I conclude these circumstances cannot be made subject to criminal sanctions and the ordinance does so, the ordinance is overbroad and therefore unconstitutional. I would reverse the trial court's holding to the contrary.

Some, perhaps many, believe that it is not appropriate for persons to bear arms in a highly urbanized environment or that our society has advanced to a stage where the right to bear arms is obsolete. Some believe that the possession of a firearm may precipitate crime or, at a minimum, may elevate an otherwise minor episode or circumstance into a catastrophic event. These beliefs may have statistical support or basis in fact. If that be the case, the solution, in my view, may be limited to amending or repealing article 2, section 13 of the Colorado Constitution.