Douglas BRUCE, Plaintiff-Appellant,

v.

CITY OF COLORADO SPRINGS, a home rule city and Colorado municipal corporation; Title-Setting Board; and Patricia Kelly, Cindy Conway, and Robert Briggle, in their official capacities as members of the City Title-Setting Board, Defendants-Appellees.

No. 09CA1541.

Colorado Court of Appeals, Div. VI.

June 10, 2010.

Douglas Bruce, Pro Se.

Patricia K. Kelly, City Attorney, Shane White, Senior City Attorney, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiff, Douglas Bruce, appeals the trial court's order issued after remand from an earlier appeal to this court, *see Bruce v. City of Colorado Springs*, 200 P.3d 1140 (Colo. App.2008) (*Bruce I*), concluding that the City of Colorado Springs's single subject ordinance set forth in section 5.1.503 of the City Code is not unconstitutional and that plaintiff's petition for an initiated ordinance violates the single subject rule. Plaintiff also appeals the trial court's order denying his

motion seeking disqualification of the trial court judge. We affirm.

The relevant underlying facts are set forth in *Bruce I,* and we do not repeat them here. It suffices to say that plaintiff has unsuccessfully attempted to place an initiative on the municipal ballot that is intended to prevent the City's use of non-business enterprises to serve as "fronts for traditional governmental public works projects paid for by forced fees (taxes) outside TABOR's [Colorado Taxpayer Bill of Rights] spending limit."

## I. Compliance with C.A.R. 28

Initially, we note that plaintiff's briefs fail to meet the basic requirements of C.A.R. 28. The briefs fail to set forth a table of contents, a table of cases, a statement of the issues presented for review, a summary of the argument or any designation to the record other than bare references to certain exhibits. The briefs also lack case citations, applicable standards of review, and certifications that the briefs comply with C.A.R. 28. Ordinarily, we would summarily strike plaintiff's briefs and dismiss the appeal. However, in numerous cases filed with this court, plaintiff has often contended that he has been denied his day in court. In addition, the issues raised here are of public concern.

Under these rare circumstances, we have determined that it is in the public interest to consider plaintiff's briefs and the issues raised therein. *See Barr Lake Vill. Metro. Dist. v. Colo. Water Quality Control Comm'n,* 835 P.2d 613, 615 (Colo.App.1992) (division considered issues in deficient brief).

However, plaintiff is cautioned that, in the future, his failure to comply with C.A.R. 28 or other applicable appellate rules may result in striking the noncomplying brief or other appropriate sanctions, including dismissal. *See* C.A.R. 38(e); *State ex rel. Dep't of Corr. v. Pena,* 788 P.2d 143, 147 (Colo.1990) (when confronted with a party's failure to comply with the appellate rules, an appellate court should consider the full range of possible sanctions and select the one most appropriate under the circumstances presented in a particular case).

## II. The City's Single Subject Ordinance

The current and applicable version of the City's single subject ordinance, section 5.1.503, provides in relevant part:

A. Legislative Finding: The City Council hereby finds that a single subject requirement for initiatives is necessary to prohibit the practice of "log rolling" whereby diverse and unrelated matters are passed as one matter because no single matter could be passed on its own merits. Council further finds that this single subject limitation on initiatives submitted for voter approval facilitates concentration on the meaning and wisdom of the proposal[,] preventing surprise and deception as to the matter being put to a vote. The Council hereby further finds that people have the right to petition their government through the initiative process. However, neither the Colorado Constitution nor the City Charter reserves to the people the right to exercise executive or administrative powers.

B. Single Subject Initiatives Required: The Initiative Review Committee, as well as the Title Board, shall ensure that initiatives contain only single subjects to enable voters to understand the subject matter of the initiative. Matters proposed for submission to the electorate must be necessarily or properly connected and not disconnected or incongruous.

The same single subject requirements are found in Colorado Constitution article V, section 1(5.5), and section 1–40–106.5, C.R.S. 2009, which apply to statewide ballot measures.

The Colorado Constitution provides that the state title-setting board may not set the title of a proposed initiative if the initiative contains multiple subjects. Article V, section 1(5.5) provides:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a

single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls. In such circumstance, however, the measure may be revised and resubmitted for the fixing of a proper title without the necessity of review and comment on the revised measure in accordance with subsection (5) of this section, unless the revisions involve more than the elimination of provisions to achieve a single subject, or unless the official or officials responsible for the fixing of a title determine that the revisions are so substantial that such review and comment is in the public interest. The revision and resubmission of a measure in accordance with this subsection (5.5) shall not operate to alter or extend any filing deadline applicable to the measure.

Colo. Const. art. V, § 1(5.5); *see also* Colo. Const. art. XIX, § 2(3) ("No measure proposing an amendment or amendments to this constitution shall be submitted by the general assembly to the registered electors of the state containing more than one subject, which shall be clearly expressed in its title . . . .").

Having set forth the relevant constitutional, statutory, and municipal single subject requirements, we now turn to plaintiff's arguments on appeal.

### III. Constitutionality of the City's Single Subject Ordinance

Plaintiff contends that the City's single subject ordinance is unconstitutional because it was adopted without first holding a public election to allow voters to decide the matter through a state constitutional amendment and because it violates the right to petition. We are not persuaded.

■ We review de novo the constitutionality of a municipal enactment. *Trinen v. City & County of Denver,* 53 P.3d 754, 757 (Colo. App.2002).

■ An ordinance is presumed to be constitutional, and the party attacking it must establish its unconstitutionality beyond a reasonable doubt. *Id.* If an enactment can reasonably be construed so as to harmonize it with the constitution, that construction should be preferred. *Id.*

Article XX, section 6 of the Colorado Constitution states that a home rule city or town shall have

powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:

. . .

d. All matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof, including the calling or notice and the date of such election or vote, the registration of voters, nominations, nomination and election systems, judges and clerks of election, the form of ballots, balloting, challenging, canvassing, certifying the result, securing the purity of elections, guarding against abuses of the elective franchise, and tending to make such elections or electoral votes non-partisan in character.

■ As pertinent here, this section gives municipalities all the powers of the General Assembly with regard to local and municipal electoral matters. *Town of Frisco v. Baum,* 90 P.3d 845, 847 (Colo.2004).

Colorado Constitution article V, section 1(9) also permits cities, towns, and municipalities to provide for the manner of exercising the initiative and referendum powers as to their municipal legislation:

The initiative and referendum powers reserved to the people by this section are hereby further reserved to the registered electors of every city, town, and municipality as to all local, special, and municipal legislation of every character in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws; except that *cities, towns, and municipalities may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.*

(Emphasis added.)

■ We reject plaintiff's argument that the Colorado Constitution had to be amended

by popular vote before the City could impose a single subject rule on municipal ballot initiatives. Under the Colorado Constitution, the City, as a home rule city, is authorized to enact ordinances establishing the manner in which municipal legislation is exercised, which clearly includes ordinances that require initiatives submitted for voter approval to contain only single subjects. We therefore reject plaintiff's contention that the City's single subject ordinance is unconstitutional because it was not submitted to statewide popular vote before it was enacted.

■ We also reject plaintiff's argument that the City's single subject requirement violates the right to petition. In so doing, we adopt the reasoning set forth in *Campbell v. Buckley*, 203 F.3d 738, 746–47 (10th Cir. 2000), which upheld the constitutionality of the similar single subject rule set forth in Colorado Constitution article V, section 1(5.5):

> While compliance with the single subject requirement may be difficult for some who wish to offer ballot initiatives, and may to some extent limit their goal of unfettered participation in the electoral and legislative process, we are satisfied that the state's reasons for its procedures are sufficiently weighty to justify the procedures.

Plaintiff contends that the state constitutional right to petition cannot be limited by municipal law; however, the Colorado Constitution in fact provides that a home rule city may enact such a limitation in matters concerning municipal legislation. *See* Colo. Const. art. V, § 1(9); Colo. Const. art. XX, § 6. We, therefore, conclude that the City's ordinance requiring a single subject to be expressed in ballot initiatives does not offend the Colorado Constitution.

## IV. Whether Plaintiff's Proposed Initiative Violates the City's Single Subject Ordinance

■ We now address and reject plaintiff's argument that the trial court erred in concluding that his initiative contains more than a single subject in violation of the City's single subject ordinance.

Because the single subject requirement set forth in the City Code is substantially similar to the single subject rule set forth in Colorado Constitution article V, section 1(5.5) and section 1–40–106.5, reliance on case law interpreting the principles and goals of the constitutional and statutory single subject rule is appropriate. *Cf. City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244, 1248 (Colo.2000) (courts interpret the ordinances of local governments as they would any other form of legislation). For ease of reference, we set forth those principles and goals here.

■ An initiative violates the single subject requirement when it (1) relates to more than one subject and (2) has at least two distinct and separate purposes. *In re Title for 2007–2008 No. 61,* 184 P.3d 747, 750 (Colo.2008); *In re Title for 1999–2000 No. 25,* 974 P.2d 458, 463 (Colo.1999); *In re Title for Public Rights in Waters II,* 898 P.2d 1076, 1078 (Colo.1995). In contrast, if the initiative tends to achieve or to carry out one general object or purpose, it constitutes a single subject. *In re 2007–2008 No. 61,* 184 P.3d at 750; *In re Public Rights in Waters II,* 898 P.2d at 1078–79.

■ The single subject requirement is intended to prevent two practices by initiative proponents. *In re 2007–2008 No. 61,* 184 P.3d at 750. First, it serves to ensure that each initiative depends upon its own merits for passage. *See* § 1–40–106.5(1)(e)(I), C.R.S.2009; *see also In re 2007–2008 No. 61,* 184 P.3d at 750; *In re Title for 2005–2006 No. 55,* 138 P.3d 273, 277 (Colo.2006); *In re Title for 1997–1998 No. 64,* 960 P.2d 1192, 1196 (Colo.1998). Second, the single subject requirement is intended to "prevent surreptitious measures ... [so as] to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), C.R.S.2009; *see also In re 2007–2008 No. 61,* 184 P.3d at 750; *In re 1997–1998 No. 64,* 960 P.2d at 1196. Section 1(5.5) "is intended to prevent voter surprise or uninformed voting caused by items concealed within a lengthy or complex proposal." *In re Public Rights in Waters II,* 898 P.2d at 1079. "It also discourages placing voters in the position of voting for some matter they do not support to enact

that which they do support." *In re 2005–2006 No. 55,* 138 P.3d at 282.

In reviewing whether an initiative comports with the single subject requirement, courts should not address the merits or the future application of the proposed initiative. *In re 2007–2008 No. 61,* 184 P.3d at 750; *In re 1997–1998 No. 64,* 960 P.2d at 1197. However, courts must sufficiently examine the initiative to discern whether the prohibition against multiple subjects has been violated. *See In re 2007–2008 No. 61,* 184 P.3d at 750; *In re 1997–1998 No. 64,* 960 P.2d at 1197. "An evaluation of whether the component parts of a proposed initiative are connected and are germane to one another, so as to comprise one subject, simply cannot be undertaken in a vacuum." *In re Proposed Ballot Initiative on Parental Rights,* 913 P.2d 1127, 1134 (Colo.1996) (Mullarkey, C.J., concurring in part and dissenting in part). The single subject requirement must be construed liberally so as not to impose undue restrictions on the initiative process. *In re Title for 1997–1998 No. 74,* 962 P.2d 927, 929 (Colo.1998) ("Multiple ideas might well be parsed from even the simplest proposal by applying ever more exacting levels of analytic abstraction until an initiative measure has been broken into pieces. Such analysis, however, is neither required by the single[ ] subject requirement nor compatible with the right to propose initiatives guaranteed by Colorado's constitution.").

Here, plaintiff's proposed initiative states: Enterprise Policy. City enterprises shall bill and collect charges for voluntary customer contracts only. Enterprise payments to the city shall phase out in ten or fewer equal yearly steps starting in January 2009, with equal savings for each customer contract. Future loans, gifts, and subsidies between an enterprise and the city or another enterprise are prohibited.

We agree with the trial court that the proposed initiative contains more than one subject with two distinct and separate purposes. The first sentence of the initiative concerns the elimination of involuntary charges to City residents by City enterprises. It seeks to prohibit City enterprises from charging fees to City residents who do not specifically consent to certain services or who do not have voluntary contracts with the City enterprise. The second and third sentences involve reforming City enterprises to be fiscally independent from the City and other enterprises by phasing out enterprise payments made by City enterprises to the City and by prohibiting City enterprises and the City from sharing funds or shifting funds between the City and various enterprises. Thus, while the purpose of the first sentence is the elimination of involuntary charges to City residents by City enterprises, the primary purpose of the concluding sentences is to create City enterprises that operate as fiscally independent, self-sufficient businesses.

Although the separate provisions of the proposed initiative all relate to City enterprises, they are not directly connected or interrelated. Legislation aimed at reforming City enterprises to become fiscally independent could be imposed without an involuntary fee prohibition clause, and vice versa. No evidence was presented during the hearings before the Title Board or the trial court suggesting that the dual purposes of the initiative are dependent or inseparable.

Furthermore, the proposed initiative could place voters in the position of voting for a matter they do not support to enact one they do support. As the trial court pointed out,

Voters who may adamantly support a measure to prohibit involuntary fees for items such as storm water projects may or may not also support an initiative to permanently alter the City's ability to set up, utilize, and collect payments from City owned businesses whether currently in existence (such as the utilities enterprise) or yet to be established. Individuals who fervently believe that City businesses should be operated as separate, independent entities may or may not agree with the proposition that the City should not have the authority to charge residents for public improvement projects through these enterprises.

We therefore conclude that the trial court did not err in concluding that the proposed initiative contains more than one subject,

rendering the Title Board unable to determine or express the true intent and meaning of the petition. *See* City Code § 5.1.504(C). Accordingly, we agree with the trial court that the Title Board did not err in refusing to designate and fix a title for plaintiff's proposed initiative.

## V.   Motion to Disqualify

Last, we are unpersuaded by plaintiff's contention that the trial judge should have disqualified himself.

C.R.C.P. 97 provides, in relevant part:

A judge shall be disqualified in an action in which he is interested or prejudiced, or has been of counsel for any party, or is or has been a material witness, or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.

The test for disqualification under this rule is whether the motion and supporting affidavits allege sufficient facts from which it may reasonably be inferred that the judge is prejudiced or biased, or appears to be prejudiced or biased, against a party to the litigation. *Prefer v. PharmNetRx, LLC,* 18 P.3d 844, 850 (Colo.App.2000).

In passing on the sufficiency of the motion for disqualification, the judge must accept the factual statements in the motion and affidavits as true, even if he or she believes them to be false or erroneous. However, a motion which merely alleges opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, is not legally sufficient to require disqualification. *Id.*

The sufficiency of a motion for recusal is a legal determination subject to independent review by the appellate court. *Id.*

Plaintiff's motion, accompanied by his own affidavit, alleged that the trial judge was biased and prejudiced against him. However, plaintiff's allegations of bias and prejudice were based largely on the trial judge's prior rulings. Plaintiff also alleged that the trial judge "continually scowled, frowned, and made other facial gestures at plaintiff to express the [judge's] disapproval of plaintiff's testimony."

The trial court concluded, and we agree, that the motion was insufficient to warrant recusal. *See Goebel v. Benton,* 830 P.2d 995, 1000 (Colo.1992) (rejecting contention that judge's delay and unfavorable rulings were bases for disqualification, and noting that ruling by judge on legal issue does not require disqualification absent facts in the motion or affidavits from which it may reasonably be inferred that judge is biased or prejudiced); *In re Marriage of McSoud,* 131 P.3d 1208, 1223 (Colo.App.2006) (adverse rulings do not establish as a matter of law grounds to disqualify a trial court judge).

The orders are affirmed.

Judge LOEB and Judge MILLER concur.